**INTERNATIONAL PAPER COMPANY,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

**No. 15616.**

United States Court of Appeals
Fifth Circuit.

Nov. 23, 1955.

Rehearing Denied Jan. 23, 1956.

Theophil C. Kammholz, General Counsel, Chicago, Ill., David P. Findling, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Samuel M. Singer, Nancy M. Sherman, Attorneys, N. L. R. B., Washington, D. C., for petitioner.

Eli A. Weston, Boise, Idaho, for respondent.

Before HEALY and CHAMBERS, Circuit Judges, and HARRISON, District Judge.

B. D. Murphy, James N. Frazer, Atlanta, Ga., Ben D. Turner, Mobile, Ala., J. Willis Conger, Bainbridge, Ga., Robert E. Coll, Atlanta, Ga., for appellant. Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., Conger & Conger, Bainbridge, Ga., McCorvey, Turner, Rogers, Johnston & Adams, Mobile, Ala., of counsel.

Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, John C. Harrington, Attys., Dept. of Justice, Washington, D.

C., Frank O. Evans, U. S. Atty., Macon, Ga., for respondent.

Before RIVES, TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

International Paper Company here appeals from an order of the District Court taking from the jury, in a condemnation of timber lands, the issue of severance damage to non-contiguous lands and paper mill situated some 136 miles away, and from the judgment of the court, after a jury trial, awarding condemnee the sum of $214,211.11 as just compensation for 9509.54 acres of land taken, and the sum of $23,676.76 as net severance damage to the contiguous lands not taken.

The principal contention of the appellant is that the court erred when it held, as a matter of law, that no issue should go to the jury as to damage to the paper mill property as a part of the "unitary tract" from which the 9509.54 acres were taken. A subsidiary question is whether procedurally the Court could withdraw such issue from the jury in the manner in which it acted. Other contentions made by appellant criticize the admission of evidence offered by the government and the rejection of evidence tendered by appellant touching the question of value and certain charges of the court, as well as the trial court's general "conduct of the trial."

The facts are not greatly in dispute. On November 19, 1952, the United States of America filed in the United States District Court for the Middle District of Georgia a Petition for Condemnation and a Declaration of Taking with respect to certain tracts of land owned by International Paper Company, said tracts being designated Tract K–1006, Parcels 1 and 2, and Tract I–801. This taking by condemnor involved, in the aggregate, 9509.54 acres of land. Condemnor deposited in the Registry of the Court the total sum of $223,946 as estimated just compensation for the taking of the lands involved.

The tracts of land of condemnee taken by condemnor were located in Decatur County, Georgia. In addition to these lands, condemnee owned 440,000 additional acres of land in this general area, several woodyards, one of which was located in Bainbridge, Decatur County, Georgia, and a large, modern paper mill located in Panama City, Bay County, Florida. Condemnee's paper mill in Panama City, Florida, was approximately 136 miles from the land condemned and from condemnee's woodyard in Bainbridge, Georgia.

One of the issues raised by the pleadings was condemnee's contention that because of integrated unitary use, the land taken by condemnor, the woodyard in Bainbridge, Georgia, and the paper mill in Panama City, Florida constituted a single unitary tract and, therefore, condemnee was entitled to receive as just compensation, compensation for the lands actually taken and severance damage to the contiguous land not taken, and also compensation in the nature of severance damage resulting from the decrease in market value of the non-contiguous woodyard and paper mill caused by the taking.

Condemnor filed a motion for summary judgment upon the issues raised by condemnee's answer with respect to the question of integrated unitary use of the land taken and the woodyard and paper mill. Condemnor had not complied with the requirement for notice prescribed in Rule No. 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A., and the Court ruled that a hearing on the motion on that date would be premature.

The trial of the case before a jury commenced on the next day and was concluded on December 15, 1954. During the trial, condemnee presented evidence with respect to the value of the land taken, with respect to the integrated unitary use of all of condemnee's land (including the land taken) and the woodyard and paper mill, and with respect to the depreciation in market value of the unit, i. e., the woodland, the woodyard and the

paper mill, resulting from the taking of this land.

After the introduction of all evidence and after both sides had closed, condemnor moved for summary judgment with respect to the issues of the case pertaining to the integrated unitary use of condemnee's lands, woodyard and paper mill, and with respect to severance damage to the non-contiguous lands and property. The Court sustained this motion and withdrew from the jury the issues and evidence relating to integrated unitary use and severance damages with respect to non-contiguous land and property of condemnee,[1] leaving for their consideration only the question of value of the 9509.54 acres actually taken and the question of severance damages to the remaining portion of the contiguous lands not taken in Tract K–1006 and Tract I–801, which tracts contained a total of some 24,500 acres and from which the 9509.54 acres were taken.

■ Turning first to the procedural point, we think it plain that the trial court in effect merely withdrew from the jury's consideration all evidence as to severance damage to the paper mill and thus withdrew that issue from the jury. The use by the trial judge of the term "summary judgment" in his announcement is immaterial. His action was effectuated by making a statement to the jury withdrawing the matter [2] and by an order entered after the jury had retired.[3] Thus, unless we magnify form and ignore substance, we must conclude that the court merely ruled as a matter of law that there was no evidence to support any theory of severance damage to the paper mill, and that this issue was withdrawn.

Regardless of the form in which this ruling was made, appellant made its objection known to the court and the issue is presented to us for our review.

If the court properly construed the law touching this matter, then there is no basis for a reversal on this ground. If it erred, then it would, of course, be necessary for us to send the case back for submission of this issue to a jury.

For the reasons assigned below, we are satisfied that the court's rulings were correct as to this, the principal issue on appeal.

1. The government moved "for a directed verdict or whatever the appropriate remedy is to eliminate the unitary or to eliminate the claim of severance damage based on unitary usage." Appellant argued that the court could not direct a partial verdict. Whereupon the court said:

"Well, I will tell you, if there is any doubt about it, I am so firmly convinced in my mind that the Panama City mill is not and has not been shown to be a part of a unitary holding for the purpose of allowing severance damages in this case; and I am so firmly convinced that the evidence doesn't show any such damages, even if it could be considered as a unitary holding or tract, I think I will grant the motion for summary judgment as to all areas of land involved in this case except the contiguous tract of 24,-500 acres, more or less; and confine the jury issue and the jury's consideration to that question."

2. Before giving his charge he said: "Members of the jury, before the arguments begin, I may say that there has been withdrawn from your consideration the matter of severance damages claimed with respect to the Panama City mill. So that, the issue now is confined to the tract of land 24,500 acres, more or less, and the taking by the Government therefrom of 9509 acres, more or less.

"I mention that so that you will understand counsel's argument, in that they will not discuss the alleged severance damage claim with respect to the Panama City mill. We have ruled that that is controlled as a matter of law, and, therefore, this jury will not have to pass upon those features of this case."

3. "After the introduction of all evidence and after both sides to the case had closed, a motion was made by counsel for condemnor that the Court enter judgment for condemnor on the issues of the case which pertain to severance damages as to lands and property not contiguous to the lands actually condemned. After hearing from counsel for both condemnor and condemnee, it is Ordered, Considered And Adjudged that said motion be, and the same is hereby, sustained.

"This 15 day of December, 1954.

"W. A. Bootle,
"United States Judge."

■■ There is no need to discuss the principle that is known and referred to by both parties, and that was certainly observed by the trial court, to the effect that where a verdict is directed against a party or where a non-suit is granted as to a particular issue because of a failure of proof "the evidence adduced by the [aggrieved party] shall be taken as true and all reasonable inferences deducible therefrom shall be given their most favorable intendment." [4] But if all the evidence introduced on behalf of the aggrieved party with all inferences properly to be drawn therefrom, does not total up to that degree of substantiality that would support a favorable verdict if rendered, then it is the duty of the trial court to eliminate the matter from the jury's consideration.

Here appellant argues that the evidence was susceptible of a finding that this was a "unitary tract" and that even though the particular 9509.54 acres taken were some 136 miles away from the paper mill and in a different state, a severance of this tract was a severance from the very unit of which the mill was a part. Appellant then contends that the taking of this small tract actually damaged the unit in a particular that was related to the paper mill itself. It says that the realty of which the paper mill was a part would be worth less after these 9509.54 acres were taken than before, and that this loss in Florida would flow automatically and directly from the taking.

Assuming for the moment that there was sufficient evidence to warrant submission to the jury of the question as to whether the entire operation made of all the lands and plant of appellant a unitary tract, we must agree with the trial court that there was no evidence that would warrant submission to the jury of the question of damages to the paper mill. Appellant's proof of this damage was in the nature of opinion evidence by which expert witnesses stated that in their opinion the mill itself would be worth between $519,037 and $771,000 less by reason of the taking by the government of this acreage.

■ Of course, opinion evidence may of itself be substantial enough to take a case to a jury. However, an opinion is no better than the hypothesis or the assumption upon which it is based.[5]

■ We think it quite doubtful that a sufficient case was made to warrant submission to the jury the question "Was this acreage in Georgia at a distance of 136 miles from the paper mill in Panama City part of a single tract which also included the mill?" The basic rule as to the considerations touching on this question is set down in United States v. Miller, 317 U.S. 369, on page 376, 63 S.Ct. 276, on page 281, 87 L.Ed. 336, where the Court says:

"If only a portion of a single tract is taken the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract. Such damage is often, though somewhat loosely, spoken of as severance damage."

The Court further says:

"As respects other property of the owner consisting of separate tracts adjoining that affected by the taking, the Constitution has never been construed as requiring payment of consequential damages."

4. Smith v. Shevlin-Hixon Co., 9 Cir., 157 F.2d 51, 53; See also United States v. Dupre, 5 Cir., 110 F.2d 315, 317.

5. See State of Washington v. United States, 9 Cir., 214 F.2d 33, at page 43, certiorari denied 348 U.S. 862, 75 S.Ct. 86, where the court said: "Opinion evidence without any support in the demonstration and physical facts, is not substantial evidence. Opinion evidence is only as good as the facts upon which it is based." And see United States v. Honolulu Plantation Co., 9 Cir., 182 F.2d 172, at page 178, where the court said: "Where unwarranted theories of law or assumptions of fact guide the expert and are used as a basis for value by the Court, the evaluation will be set aside and the cause remanded for new findings."

The Third Circuit Court of Appeals, in Sharpe v. United States, 112 F. 893, at page 896, 57 L.R.A. 932, in language approved by the Supreme Court on writ of error, 191 U.S. 341, 354, 24 S.Ct. 114, 48 L.Ed. 211, stated the rule as follows:

"It is not denied that in rendering the 'just compensation' secured by the constitution of the United States to the citizen whose property is taken for public uses it is right and proper to include the damages in the shape of deterioration in value which will result to the residue of the tract from the occupation of the part so taken. In applying this rule, however, regard is had to the integrity of the tract as a unitary holding by the owner. The holding from which a part is taken for public uses must be of such a character as that its integrity as an individual tract shall have been destroyed by the taking. Depreciation in the value of the residue of such a tract may properly be considered as allowable damages in adjusting the compensation to be given to the owner for the land taken. It is often difficult, when part of a tract is taken, to determine what is a distinct and independent tract; but the character of the holding, and the distinction between a residue of a tract whose integrity is destroyed by the taking and what are merely other parcels or holdings of the same owner, must be kept in mind in the practical application of the requirement to render just compensation for property taken for public uses. How it is applied must largely depend upon the facts of the particular case and the sound discretion of the court."

Both parties before us cite the First Circuit Court of Appeals case of Baetjer v. United States, 1 Cir., 143 F.2d 391. There the court, after announcing the rule as above quoted, determined on the facts that the land taken on the Island of Vieques was a part of a unit which was situated also on the main Island of Puerto Rico, and that, therefore, severance damage to the mill properties where the sugar cane from the taken lands was processed into sugar should be considered in the award. While this decision is respectable authority for the proposition that non-contiguous lands may, under certain circumstances, constitute a single unit, the case, on its facts, is too dissimilar to be persuasive authority for appellant here.

The evidence before the court below was to the effect that appellant owned approximately 450,000 acres of land at the time of taking; that, notwithstanding such ownership, the operation of its mill consumed a quantity of forest products greatly in excess of its own production. In fact 85% to 90% of the wood used in the processing of paper was acquired from individual owners of timber tracts, and only 10% to 15% came from appellant's own acreage. No such fact as this appears in the Baetjer case. Furthermore, there is no evidence in the record before us that there was any shortage of wood products available for purchase on the open market. To the contrary, the facts as to the indiscriminate use by the paper mill of its own and other's wood products indicates that a finding of unitary use could not be properly based upon either the current operation or any reasonable expectation in the foreseeable future that appellant would consider its own small tracts in any different light than the tracts of small owners whose products would be available on a competitive basis.

Although, as we have stated, it is quite doubtful whether there was sufficient evidence to authorize a verdict of the jury that severance damages to the mill could be considered on the unitary tract theory, it is not necessary for us to base our affirmance of the district court's order on this element of damages on this point. This is true because we have no doubt whatever about the correctness of the judge's ruling that no damages to the mill property were proven by competent evidence.

In presenting its evidence as to the decrease in value of the paper mill,

the appellant's hypothetical question, or, rather, the assumptions on which the answers were given by the witnesses, excluded any consideration of the availability of additional lands similar to that taken. All three of appellant's experts proceeded on a "rule of thumb," which they stated to be one accepted in the industry to the effect that a paper mill "needs" an acre of its own land for every ton of paper produced annually. They concluded that since the plant produced 468,000 tons of paper in the year in question, it should have 468,000 acres of its own land instead of only 450,000 before the taking. As an illustration of this reasoning, we refer to the testimony of witness Norman. He arrived at a present depreciated value of the plant on the assumption that it had the "needed" acreage. This was $40,546,317. He then estimated that if the company owned no land it would be worth only scrap value, a figure he put at $15,000,000. From the figure of $15,000,000 to $40,-546,317 he ran a straight line graph and determined that the present value of the mill should be reduced to $39,546,719 because it was short some 18,000 acres of land from its "needs." This graph thus gave an automatic formula for reducing the dollar value of the mill by the reduction by a single acre of the mill's owned land. The loss of 9509.54 acres, according to this formula, damaged the mill to the extent of $519,037, because on his graph he found the mill with the new total acreage to have a value of only $39,-027,680, as against $39,546,717 with its acreage before taking.

In response to repeated questions from government counsel and the court, the witness stated that his computation was sound and valid *without taking into consideration whether other lands were available for purchase that would in all respects make up the deficiency resulting from the taking.* The two other witnesses who testified to damage to the mill property made the same assumptions and specifically stated, as did appellant's counsel, that the availability of other lands made absolutely no difference in ascertaining that the mill property became worth $46 less for each acre of land that it lost or disposed of.

Such a contention is, it seems to us, clearly fallacious. The constitution requires that the owner be paid just compensation for property taken. The value of the land actually condemned by the government in the case before us was found by the jury to be $214,211.11, or approximately $22.50 an acre. In finding this figure it has been determined that this was the fair market value of the land. In the absence of any proof that no similarly located land was available, it must be presumed that 9509.54 acres of land could be purchased at approximately the same price. Yet, appellant says that the mere loss of these acres resulted in direct irreparable damage to the mill itself to the extent of an *additional* $46 an acre, solely because the mill "needed" one acre of land per ton of annual product. It was immaterial, says appellant, that it could turn right around and make its acreage whole by buying 9509.54 other acres with the proceeds of the condemnation award. Moreover, the record shows that appellant actually purchased 100,000 acres of land subsequent to the taking here involved.[6]

Appellant's contention that it is entitled to receive what amounts to approximately three times the value of the land taken upon the theory discussed above, not only offends the court's sense of justice, but it also offends any rules relating to the awarding of just compensation for property taken for public use. There is no authority for such proposition.[7]

---

6. We have discussed the appellant's theory as though the asserted assumption that a mill would be valueless as a mill without title to its own timber land is valid; such a proposition is tenuous indeed, and our discussion of it as a possible theory does not imply that it is acceptable from a legal standpoint.

7. The Baetjer case, supra, is decidedly not a precedent for this feature of the case, because the findings of fact there before the court included a finding that

We now turn our attention to the allegations of error resulting (a) from the court's admitting in evidence proof of sales of land either too remote in point of time or not comparable in size; (b) from the court's admitting testimony as to the price paid for this particular tract of land or the larger tract of which it was a part; (c) from the court's permitting witnesses to break down such purchase price into its component parts; and (d) from the court's admitting opinion testimony based on hearsay as to the value of the component element making up the purchase price in sales of land proved as comparable.

■ On the threshold of this discussion, we consider it well established that, typically, the fair market value of real estate is proven by expert witnesses. Such experts must base their opinions on such information in the art that accounts for their becoming experts. Such opinions are based on their knowledge of other sales comparable in type, location and size, their knowledge of the likely demand for such property and their knowledge of the market conditions prevailing in the area in which the land lies. Because of the nature of expert testimony on value, a certain amount of hearsay is a necessary ingredient of the opinion which is the product of the expert's study. Both with respect to application of the hearsay rule, therefore, as well as with respect to the fixing of standards of remoteness and similarity, the trial judge must play an unusually important part. As we said in Atlantic Coast Line R. Co. v. United States, 5 Cir., 132 F.2d 959, 963:

> "When the effort is not to show the sale of other property, or its lease, as a standard of value, but these are referred to by a witness experienced in dealing with such properties in the neighborhood and qualified to have an opinion on values, merely as things in his knowl-

edge which contributed to the opinion which as an experienced man he holds, his opinion ought not to be rejected from evidence, but ought to go to the jury for their consideration of its reliability, under instructions."

■■ With respect to objection (a), certainly this Court will not substitute its judgment for that of the trial court in determining whether a particular sale was too remote in point of time or was not comparable in size. As to (b), it is generally recognized that the purchase price of the particular land taken is admissible as one of the elements to be considered by the expert in arriving at his opinion. This is especially true where, as here, the witness undertook to support his opinion by outlining a history of the land in question by considering the use that was made of its several component parts not for the purpose of proving that the original purchase price was the fair market value at the time of taking, but as an aid to him in forming an intelligent opinion.

Appellant's criticism under (c) above has been answered in what we have just said in discussing the propriety of the court's permitting the witness to state the basis for his opinion. As to the objection to admitting opinion testimony based on hearsay under (d) above, appellant relies strongly on the case of United States v. Katz, 1 Cir., 213 F.2d 799. Actually, however, what happened in that case was the trial court excluded an opinion based on hearsay and the Court of Appeals affirmed without, however, stating as a matter of law that it would have been error for the trial court to have admitted the testimony. The court there said:

> "We are loath to circumscribe a trial court's discretion, however, by laying down a rule of law prohibiting an expert witness from ever giving the hearsay grounds upon which

there was no other cane-producing land available to take the place of that which were condemned. Further, it is noteworthy that on re-trial of that case the

trial court found, even under these circumstances, that no severance damage was shown to the mill property itself.

his opinion rests on direct examination. Perhaps there may be situations in which a trial court would think it helpful to permit a witness to give the basis, even if resting upon hearsay, for his opinion. We therefore sustain the ruling of the court below on the ground that no abuse of discretion is shown, rather than upon the accuracy of the ruling as a matter of law." United States v. Katz, 1 Cir., 213 F.2d 799, 800, 801.

The government relies principally on a decision of the Court of Appeals for the Fourth Circuit in which the court says:

"If the expert has made careful inquiry into the facts, he should be allowed to give them as the basis of the opinion he has expressed. If he had not made careful inquiry, this will be developed on cross examination and will weaken or destroy the value of the opinion. Ordinarily evidence as to facts of this sort given by an expert as the basis of his opinion as to value comes with a sufficient guaranty of trustworthiness to justify the relaxation of the hearsay and best evidence rules." United States v. 5139.5 Acres of Land, etc., 4 Cir., 200 F.2d 659, 662.

We believe that since an opinion of an expert realty appraiser is necessarily based on factors that cannot be proven as substantive facts, and since the truth of the facts on which the opinion is based are subject to inquiry on cross-examination, the more liberal rule announced by the Fourth Circuit should apply to cases of this type. We think this is implicit in the language quoted above from the Atlantic Coast Line case, supra, decided by this Court.

Next, the appellant asserts that the trial court erred in excluding proffered testimony as to other sales. Each of these sales occurred after the date of the taking in the case before us, and the court also commented on the fact that the tracts involved were too small. Whether the court would have been justified in keeping out evidence of the sales merely because of their size,[8] or whether he may have found other circumstances that prevented these tracts from being otherwise comparable, it was not error for him to exclude testimony as to them on the ground that they took place after the condemnation that is here in litigation. Sales cannot be said to be comparable if they are made under such circumstances as indicate that they may reflect an increment in value due to the government's project. See Anderson v. United States, 5 Cir., 179 F.2d 281.

We have considered appellant's additional contention that the court erred in his charge to the jury on the question of just compensation and severance damage. We are convinced that such charges were properly adjusted to the issues and evidence before the jury, and that no error was committed as to them. Neither do we find any merit in appellant's general criticism of the court's "conduct of the trial." At no point did appellant feel sufficiently aggrieved by what it criticizes to move for a mistrial. We find the criticized actions of the court to be a relatively minor part in the extended trial, and the record as a whole discloses that the trial judge sought at every turn to leave all issues in the case to the free and uninhibited consideration of the jury.

The judgment is

Affirmed.

---

8. One comprised 62 acres, one was 160 and the third contained 187 acres. The court admitted evidence tendered by the government as to a 250-acre tract.