Carlton A. Fisher, J.
This is a motion made by the defendants for an order confirming a report of Commissioners of Appraisal filed in the Niagara County Clerk’s office February 18,1959 and for an order granting to defendants an extra allowance of 5% on the amount awarded them.
The plaintiff excepts to the report of the commissioners on two grounds: (1) That the award is excessive (2) That the commissioners in their report fail to state the reasoning upon which they arrived at their award.
Plaintiff requests an order: (1) that the report of the commissioners be set aside and (2) that new commissioners be appointed to hear and determine the compensation which ought justly to be made to these defendants and (3) that in the alternative, the report be returned to the Commissioners of Appraisal to state the reasoning upon which they based their decision.
The report recites that the commissioners were appointed by various orders of this court; that they took the evidence offered by the respective parties comprising 484 pages of testimony which was submitted with their report, and after due deliberation they determined the compensation which ought justly to be paid by the plaintiff to the defendants for title in fee simple to the premises described in the report by a legal description of metes and bounds, unencumbered and subject to no liens, rights or other interests, to be $85,000 together with interest from March 28,1958 to the date of the award, it being the intention of the commissioners to award full compensation to the defendants as of the date of taking, March 28,1958.
The plaintiff swore two expert witnesses, well-known as professional appraisers, who appear in many cases as witnesses for the condemning or appropriating party. These witnesses admit that they rely most heavily on comparable sales, and they make a very careful, searching and exhaustive survey and thoroughly familiarize themselves with what they believe to be comparable sales in the immediate vicinity. There Avas introduced in evidence a so-called comparable sale that took *456 place in 1953 of 31.68 acres that sold for $32,000 or $1,010 per acre with a frontage on Hyde Park Boulevard of 651.29 feet.
That same day in 1953 the rear portion of the property was sold for $48,000 with no frontage whatsoever and for a price of $1,920 per acre. Other comparable sales were given for December, 1957 of 3.21 acres for $34,000 or $10,600 per acre, and 1.15 acres or $8,700 per acre.
The plaintiff’s experts arrived at their value by the depth method of evaluation, giving the instant property $100 per front foot value and the rear acreage $2,000 per acre. It is interesting to note that the defendants’ property had a frontage of 268.11 feet on the east side of Hyde Park Boulevard which has been reduced by the plaintiff’s experts’ testimony to 244 feet which they claim to be a true width. This true width computation, of course, reduces the actual front foot value by 24 feet or $2,400 at $100 per foot. It is apparent that the plaintiff’s experts base their opinion of the value of the rear acreage on the sale that took place in 1953 of $1,920 per acre and rounded it out to $2,000 per acre. Likewise, the experts for the defendants seized upon the sale No. 3 at $10,500 per acre and gave a market value for the 14.89 acres of defendants’ land of over $10,000 per acre.
The plaintiff’s expert Hopkins admitted that there was tremendous increase of valuation of property on Hyde Park Boulevard from 1953 to 1958, and that there is a demand for industrial sites; that in the instant case, he used a depth of 500 feet for his computation of true width, but usually he uses a shorter depth when he is computing industrial frontage values. The plaintiff’s expert Hansen thought that $75 a front foot to a normal depth would be a fair valuation, but that he extended his depth to 691 feet and by his method of the depth rule, arrived at $102 per front foot for the reduced frontage of 244 feet of true depth. Both of these computations by the plaintiff’s experts, by extending the depth on the frontage valuation reduced considerably the remaining acreage. The defendants’ experts claimed that this was an improper way to determine the true market value of industrial acreage; that in tracts of this size, of almost 15 acres, it should be valued on a straight acreage basis.
The chairman of the commission questioned all the experts at great length on the subject property and all the comparables, and all the experts agreed that there was sharp and upward land valuation in the past few years on industrial sites in this particular area on Hyde Park Boulevard.
The court believes that the comparables relied upon by the plaintiff’s expert for a sale in 1953 are too remote to be considered true comparables for property taken in March,. 1958.
*457 This very point came up in a recent case decided October 15, 1958 by the Honorable Bernard Ryan, Presiding Judge of the Court of Claims. Judge Ryan is recognized as one of the most eminent authorities in the field of appropriation and condemnation cases. He was a skillful and experienced trial and condemnation lawyer before his ascendency to the Bench and he has heard and decided thousands of cases as a Judge of the Court of Claims, in all parts of the State.
He said in the case of Pauly v. State of New York (14 Misc 2d 314, 315-316):
“ First. Both claimant and defendant availed themselves of section 16 of the Court of Claims Act and served notice that upon the trial it was proposed to offer evidence with respect to sales of certain real property said to be comparable to that owned by the claimant. The appropriation maps in this case were filed and served in November, 1955 and in January, 1956. The claimant’s notice listed sales running from March 9,1953 to December 16, 1957. The court, over the objection of the Attorney-General, received testimony of each of these sales. When the claimant rested his case the Attorney-General moved to strike testimony of sales made subsequent to the date of appropriation, upon the authority of International Paper Co. v. United States (227 F. 2d 201 [1955]). In that case the court said at page 209: ‘ Whether the Court would have been justified in keeping out evidence of the sales merely because of their size, or whether he may have found other circumstances that prevented these tracts from being otherwise comparable, it was not error for him to exclude testimony as to them on the ground that they took place after the condemnation that is here in litigation. Sales cannot be said to be comparable if they are made under such circumstances as indicate that they may reflect an increment in value due to the government’s project. See Anderson vs. United States, 5 Cir., 179 F. 2d 281.’
1 " Earlier in the same opinion the court had already said with respect to an allegation of error by the trial court in ‘ admitting in evidence proof of sales of land either too remote in point of time or not comparable in size ’ that it certainly would not substitute its judgment for that of the trial court (p. 208). We denied the Attorney-General’s motion and let the testimony stand. Without disrespect to the authorities cited we prefer to follow a rule of reason as to proximity in time. (1 Orgel, Valu-' ation Under Eminent Domain [2d ed.], § 139 and cases cited.) We believe that a sale made within a reasonably brief time after the appropriation, as well as a sale made within a reasonably *458 brief time prior to the date of appropriation, should be considered by the court. In New York there is recent authority to support this belief. (Dormann v. State of New York, 4 AD 2d 979 [1956], motion for permission to appeal denied 5 A D 2d 904, further denied 4 N Y 2d 676.) ”
As Judge Ryan has said, a sale made within a reasonably brief time after the appropriation as well as a sale made within a reasonably brief time prior to the appropriation should be adhered to by the courts.
In the Dormann case quoted above, the Appellate Division, Third Department, states (4 A D 2d 979, 980): “ We find no case precisely in point where testimony was received of a sale two years after an appropriation but sales made prior to an appropriation for an even longer period of time have been approved (Village of Lawrence v. Greenwood, 300 N. Y. 231).”
The court further states (p. 980): “ The rule in Massachusetts is that testimony of after sales within a reasonable time is admissible and we see no good reason why the same rule should not apply in this State ’ \
In the case quoted (Village of Lawrence v. Greenwood (300 N. Y. 231) an award by the Commissioners of Appraisal was confirmed by the County Court, unanimously affirmed on appeal by the Appellate Division (275 App. Div. 781) and by the Court of Appeals.
In the Court of Appeals, the court said (pp. 235-236): “We come then to the problem which prompted us to grant leave to appeal. That problem involves an evidentiary ruling made by the commissioners during their receipt of evidence bearing upon damages incurred by the appellant Lawrence-Pinewood Corp. by the taking of its lot fronting on Central Avenue. By that ruling there came into the record, over the appellants’ objection and exception, testimony by an expert called by the village who, on direct examination, stated the purchase price paid on two sales of comparable property in the neighborhood. The challenged testimony is not criticized as referable to sales too remote in time or involving property too remote in location; nor is it argued that the two sales involved property not fairly comparable to the subject lot. Indeed, the two sales to which the testimony referred involved lots which were vacant — as was the Lawrence-Pinewood Corp. lot — one of which was located 50 feet away from the subject lot and was sold two and one-half years prior to the appropriation date. The other lot was slightly more remote but only 350 feet away from the appellants’ lot and was sold within three and one-half months of the appropriation date.”
*459 And at page 237: “ Valuó, in a commercial sense, is the money estimate of marketable property. Where, as here, the inquiry goes to the market value of a parcel of vacant land taken by condemnation, we believe that exddence of sales of other comparable land in the vicinity, reasonably near in point of time to the appropriation date, may properly be received on direct examination as a criterion in evaluating the land in controversy. In short, proof of the price paid for one is relevant in arriving at the value of the other. ‘1 c A non-compulsory sale betx\Tcen a willing seller and buyer is ordinarily regarded as a good test or criterion * * * in determining the value of the land in controversy. The opinion of the buying public so expressed in a free market is what usually determines values.” ’ (Epstein v. Boston Housing Authority, 317 Mass. 297, 299.) ”
The Court of Appeals has held in the above-cited decision that to permit the purchase price paid for other property said to be comparable within two and a half years prior to the date of appropriation was not reversible error. In this case there x\Tere introduced in the evidence several other alleged comparable sales. It is, of course, difficult to meet all of the required requisites for a true comparable sale. Size, shape, topography, proximity and time of sale of the comparable property is to be considered. There were many sales introduced by the plaintiff within a stone’s throw of the subject property in the years December, 1957, June 26, 1958, July 31, 1958, that meet the test to the fullest extent as to time of sale to be a true compar aide, and they meet the test as to proximity. They meet the test as to frontage on Hyde Park Boulevard. They meet the test as to the same use and purpose, although they do not meet the test as to size.
The court finds that the alleged comparable sale that took place in 1953 at $1,920 per acre for rear acreage is too remote in point of time to be considered xvhen there were others immediately before and after the taking. There was ample evidence for the final determination made by the commissioners who participated actively in questioning the experts by the commission’s chairman and by the overzealous efforts on behalf of all counsel for the respective parties who brought out on examination and cross-examination everything even remotely connected with the fair market value of the property condemned. The report is confirmed in all respects, as the finding of value is supported by substantial evidence. (See St. Agnes Cemetery v. State of New York, 3 N Y 2d 37 and cases cited therein.)
Counsel for the defendants has submitted a lengthy affidavit of nine pages which sets forth in detail the reasons why he *460 believes an additional allowance of 5% pursuant to section 16 of the Condemnation Law of New York should be allowed. The affidavit sets forth in detail the amount of work done by the attorney for the defendants including his basis of compensation and expenses.
An award for extra allowance is controlled by the circumstances in each case. There must be a showing that the lawsuit was extraordinary or difficult. The record shows this case to be the usual, ordinary trial to determine market value in March, 1958.
The application for additional allowance is denied.
Submit order accordingly.