**UNITED STATES of America,
Plaintiff,**

**v.**

**561.14 ACRES OF LAND, MORE OR LESS, IN JOHNSON AND LOGAN COUNTIES, ARKANSAS; and Thomas V. Jones et al., and Unknown Owners, Defendants.**

**Tract No. 821**

**Civ. A. No. 1553.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

July 18, 1962.

Robert E. Johnson, Asst. U. S. Atty., Charles M. Conway, U. S. Atty., Fort Smith, Ark., for plaintiff.

Mehaffy, Smith & Williams, Little Rock, Ark., I. A. Laws, Jr., Russellville, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

On October 17, 1960, the plaintiff at the request of the Secretary of the Army filed this action for the taking of property under power of eminent domain and for the ascertainment and award of just compensation to the owners and parties in interest. The use for which the property was taken is in connection with the Dardanelle Lock and Dam on the Arkansas River and such other uses as may be authorized by Congress or by Executive Order.

Simultaneously with the filing of the complaint, the conventional declaration of taking was filed and estimated just compensation for each tract and interest taken was deposited. On October 19, 1960, the court entered the usual order for delivery, effective five days from date of service of the order, of the possession or control of the lands described in the complaint and the declaration of taking, to the extent of the estate being condemned.

A total of 23 tracts was included in the complaint and the declaration of taking, but the controversy now before the court relates only to Tract 821 containing 159.0 acres situated in Johnson County, Arkansas, and being that part of the SW¼ SE¼ lying southwest of the center line of the Missouri Pacific

Railroad right of way of Sec. 9, and the E½ NW¼, and W½ NE¼, except that part lying northeast of the centerline of U. S. Highway No. 64 of fractional Sec. 16, all in Township 8 North, Range 22 West.

The fee simple title to Tract 821 was taken, "excepting and reserving to the owners and lessees, all coal, oil, gas and other minerals in and under said lands, but without right to enter upon or over the surface of said land for the purpose of drilling thereon and extracting therefrom said coal, oil, gas and other minerals; subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines."

On November 8, 1960, the landowners, Mr. and Mrs. J. W. Savage and Mr. and Mrs. L. R. Roberts, through their attorney, the late Mr. J. M. Smallwood of Russellville, Ark., filed their answer, in which they stated that they were the owners of the premises described as Tract 821; "that they have no objection or defense to the taking of said property but state that the amount of deposit in said court is not an amount of fair compensation to be paid for the property sought to be condemned." Wherefore they prayed "that just compensation be fixed for said property."

It will be noted that the plaintiff acquired title to the land on October 17, 1960. On December 15, 1960, the court appointed Commissioners under Rule 71 A(h), Fed.R.Civ.P. 28 U.S.C.A., for the reasons stated by the court in United States v. 561.14 Acres of Land, More or Less, in Johnson and Logan Counties, Arkansas (Tract 915), (W.D.Ark.1962), 203 F.Supp. 673, 677–680.

A hearing before the Commission was originally fixed for August 24, 1961, and two days prior thereto the Commission as a body viewed the tract involved together with other lands owned by the same owners and formerly used as a registered Hereford breeding farm located in Pope County, Arkansas. Upon request of the landowners the hearing was continued to December 6, 1961, on which date the hearing was held at the Court-house in Clarksville, Arkansas. The plaintiff appeared by Assistant U. S. Attorney Robert E. Johnson, and the landowners appeared in person and by their attorneys, J. M. Smallwood (now deceased) and I. A. Laws.

The testimony adduced by the plaintiff and the landowners at the hearing was taken by a court reporter and later transcribed and filed as part of the record in the case. The transcript consists of 119 pages, exclusive of Government Exhibit 1, which is a tract map of Tract 821, and Exhibit 2, which is an aerial photo of Tract 821; the landowners' Exhibit A, which is an aerial photo of Tract 821, and Exhibit B, which is an aerial photo of lands owned by the same landowners situated in Pope County, Arkansas, in Secs. 18 and 19, Township 8 North, Range 21 West. The exhibits have been filed as part of the record. The Pope County lands were not taken.

The landowners in 1945 purchased three 40-acre tracts in Pope County, 80 acres of which had formerly been farm land and one forty of which was still in timber. Later they purchased a 40-acre tract adjoining on the east of the south offset 40. Still later they purchased two additional 40's adjoining on the north the other land, and still later they purchased another 40-acre tract lying one mile south of the other lands. Thus, at the time of the hearing the landowners owned approximately 280 acres of land in Pope County, Arkansas, but counsel for the landowners refer to the Pope County lands as containing 270 acres.

On June 7, 1946, the landowners purchased the 159 acres situated in Johnson County, Arkansas, now designated as Tract 821. The Johnson County land (the tract involved herein) is situated 3½ miles in a generally westerly direction from the Pope County lands. The tract lies south of U. S. Highway 64 and south of the Missouri Pacific Railroad. It is about 2 miles southeast of Knoxville, Arkansas. It is accessible and is reached by going from U. S. Highway 64 over a grade crossing of the Missouri Pacific Railroad. The Pope County lands

are accessible from the tract involved herein by proceeding in a southeasterly direction along U. S. Highway 64 to the intersection of a county road running north about one mile from the said U. S. Highway.

Approximately 90 acres of Tract 821 is considered as open land, some of which lies along a small creek that traverses the tract from northwest to southeast. Southwest of the creek there appears what some of the witnesses described as a hogback that runs through the tract. The topography generally is rolling with some areas fairly level. There were two types of soil—a black soil next to the creek and lying along and northeast of the creek. The southern and southwest portion of the land is red, sandy clay soil. The portion of the tract lying along the creek is fairly productive, and the highest and best use of that part of the tract is for general row crops. The other portion is probably best adapted for hay crops. The west portion of the land is timberland. There were and are no structural improvements other than three dug wells and one drilled well on the tract. It was partially fenced but not adequately fenced to hold livestock.

The Commission's Findings of Fact, subparagraphs Nos. 3 to 10, both inclusive, of paragraph VI of the Report, are as follows:

"3. The Pope County lands of the owners had, prior to 1959, been developed as a Hereford breeding farm, and the pasture lands were highly developed, and the improvements were made with the view of establishing a Hereford breeding farm. Fences were built with seven wires, whereas in ordinary commercial operations, only five wires are used. The buildings, barns and sheds were of a character to be particularly suitable for a Hereford breeding farm.

"4. In the operation of a breeding farm, hay is necessary (as it is for most cattle-raising during the winter months), and hay for the breeding farm was obtained from Tract No. 821 where some alfalfa was grown and the bermuda grass was over-seeded with lespedeza and sometimes oats. The hay so produced was transported to the Pope County lands, and there used in connection with that operation. On occasion oats would be combined from Tract No. 821, and sometimes lespedeza would be combined for the purpose of obtaining seed. The oats were used as grain feed for cattle on the Pope County lands. Tract 821 produced the hay requirements of the Pope County breeding farm except in unusual periods of drought.

"5. The owners also, on occasion, leased other lands which were used for the purpose of producing grain crops to be used as feed for the cattle on the Pope County lands. Likewise, they on occasion leased lands for pasture usage.

"6. The landowners knew in 1957 that Tract No. 821 might be taken by the Government for the Dardanelle Lock & Dam Project.

"7. In June, 1959, the owners definitely decided to disperse their breeding herd by sale. In October, 1959, the dispersion sale was held disposing of a total of 220 head, including 33 bulls, 118 cows, and the remainder as calves. Thereupon, Tract No. 821 was placed in the Soil Bank.

"8. On January 1, 1960, the owners leased the Pope County lands to Arkansas Valley Industries, with whom one of the owners is associated as manager of that unit. The lands have since been used as an experimental breeding farm where approximately 100 head of cattle are kept, including 37 head acquired by Arkansas Valley Industries at the dispersion sale.

"9. The success of a breeding farm depends upon: (a) the quality and desirability of the line of cattle developed; (b) the reputation and ability of the operator, and (c) the

physical plant of the breeder, at least to the extent that it is adequate to protect the integrity of the breeding.

"10. There is no market for breeding farms, as such, either with or without cattle. Governor Turner, Mr. Lewis, and Mr. Savage, in all their experience, had not heard of the sale of land as a breeding farm, except that Governor Turner knew of one very large breeding farm at Cheyenne, Wyoming, that had been sold land and cattle together. Usually cattle are sold at a dispersion sale as was done in this instance, and subsequently the land sold for other uses, as in this instance it was leased for an experimental breeding farm."

Mr. Savage, one of the landowners, testified that he and his co-owner were unable to locate and purchase other lands in the Arkansas River Valley suitable for raising hay for the operation of the Pope County lands. Apparently an effort was made to purchase bottomland only because such land is more suitable for the growing of alfalfa. However, Mr. W. H. Lewis, who very successfully operates a ranch of 7,000 acres in Sebastian County, Arkansas, testified that he has found that clover will do as well as alfalfa and that alfalfa is not essential to the operation of a ranch.

The landowners abandoned all efforts to obtain a source of hay more than a year before the taking by the Government.

The Commission was not convinced that the landowners could not find land upon which to grow the necessary crops for the operation of the Hereford breeding farm in Pope County. However, Mr. Savage testified that hay to meet the requirements of the breeding farm could not be purchased in the vicinity of the Pope County lands where all the necessary structural improvements and pastures were located, and that importing hay from faraway places would be too expensive to make the operation economical. He was supported in that state-

ment by Governor Roy J. Turner of Oklahoma and Mr. Lewis, heretofore referred to, but neither of them professed to have any personal knowledge of the availability of hay on the open market in the vicinity of the lands in Pope County, Arkansas. The Commission found that a supply of hay was not available in the immediate vicinity.

The Commission also found that the improvements on the Pope County lands were proper and adequate for the operation of a registered Hereford breeding farm, but stated in Findings of Fact No. 14 that "the proof fails to show that the same improvements are not proper and necessary for the operation of an experimental breeding farm for which the property is now being used."

In paragraph V of the report, the Commission stated the question before it, as follows:

"It is clear that the landowners in this case have directed their proof to establishing: (1) The operation of the Pope County lands and Tract No. 821 as a unit entitling them to severance damages, if any, to the Pope land; and (2) proof as to the amount of those damages. *The landowners offer no evidence as to the value of Tract No. 821 alone.* On the other hand, the Government directs its proof to: (1) The value of Tract No. 821 without regard to the ownership of other lands in Pope County by the same parties; and (2) proof that the value of the Pope County lands is not affected. It therefore becomes necessary to determine which of the two theories should be accepted in determining just compensation."

In accordance with the theory of the landowners and the eminent attorneys who represented them at the hearing before the Commission, the landowner J. W. Savage testified that in his opinion the value of the land taken, Tract 821, and the Pope County land, as a unit, when taken together prior to the taking of Tract 821 was $121,000 and that after the taking of Tract 821 the Pope County

lands were worth only $40,000 and that just compensation of $80,000 should be awarded.

W. H. Lewis testified that Tract 821 and the Pope County lands, with their improvements, as a going concern was worth from $100,000 to $125,000, and that after the taking, the remainder, the Pope County lands was worth from $40,000 to $50,000.

Governor Turner found the value of the lands as a unit before taking at $100,000 to $110,000, but on page 90 of the transcript Governor Turner, in summarizing the value of a ranch, stated:

"There are three basic things: stock with good cattle, and they know their business, and the other is the physical plant, and of course the reputation of the operator, the three basic things that make the business, and it seems that they had all three of them over there."

R. H. Cardin, a field representative of the Production Credit Association of Central Arkansas, testified that the lands in both counties were worth before the taking $115,000 to $125,000, and after the taking the Pope County lands were worth $43,665 plus the improvements thereon, upon which he did not undertake to place any value.

A highly qualified appraiser for the Government, Mr. T. A. Raley, testified that in his opinion the market value of the tract taken was $11,400; that he did not consider any damage was done to the Pope County lands; that in his opinion the Pope County lands would sell for as much money without Tract 821 as with it; that he did not consider Tract 821 in Johnson County and the Pope County lands as a unit for the above stated reason.

A. R. Jordan, a real estate broker of Russellville, Arkansas, who had known the land for years, fixed the market value of Tract 821 as of the date of taking at $10,965.00; that in fixing such value he did not give any consideration to the Pope County lands or consider that the Pope County land and the Johnson County land constituted a single economic unit.

In Findings of Fact subparagraph 14 of paragraph VI the Commission stated:

"We have not overlooked Mr. Savage's testimony that the depreciated value of the improvements is $40,000, and his testimony that the entire value of the Pope County lands after the taking of Tract No. 821 is only $40,000. To reconcile this testimony, it would be necessary to hold that the improvements have no value whatever after the taking of Tract No. 821; yet the evidence shows that they are in fact being utilized, and proof does not establish that their value is less for an experimental breeding farm than for a purebred farm."

In Paragraph VII of the report the Commission stated:

"Considering all of the evidence on the question of whether the Pope County lands and the Johnson County lands were a unit within the meaning of the rule as to the allowance of severance damages, the Commission finds that while hay was produced on Tract No. 821 for use on the Pope County lands, it was not a unit within the rule permitting severance damage to the Pope County lands. While contiguity is not an absolute test as a matter of law, nevertheless, the distance separating the two tracts is an evidentiary fact to be considered, and the tract itself was not integrated in any way into the breeding farm except to the extent that it produced raw materials for use in the production of breeding cattle. The damage that might be sustained by the business as the result of the loss of a source of supply of some particular raw material would not, under the Federal decisions, be a compensable loss. Here the only function that Tract No. 821 had in connection with the registered breeding farm was to furnish hay. It was not used for a pasture, it was not used for breeding

pens, calving sheds, or any other of the multiple operations in connection with the breeding farm. Hay can be grown on much of the land in western Arkansas; and even if alfalfa can be grown only in the bottom, alfalfa itself is not a necessary hay in the operation of a breeding farm. Furthermore, ordinarily, hay is a common crop which can ordinarily be purchased on the open market, even though in this case the testimony negatives that proposition. Nevertheless, the loss of a hay field is not ordinarily sufficient to cause a valuable business to be terminated. The abandonment of the registered breeding farm operation more than a year before the taking and several years before the land would actually be flooded, tends to indicate that the prospective loss of Tract No. 821 was not the sole reason for the dispersion of the herd and the abandonment of a flourishing enterprise."

In the concluding paragraphs of the report, the Commission stated:

#### "VIII

"The Commission finds that even if the Pope County lands and Tract No. 821 are considered as a unit, nevertheless, the landowners have not established to the satisfaction of the Commission that the land and the improvements thereon in Pope County would have a lesser market value after the taking than before the taking of Tract No. 821.

#### "IX

"Upon all of the evidence, the Commission finds that just compensation for the taking of Tract No. 821 is the sum of $11,400, and that the landowners sustained no damage to their Pope County lands."

The court has been bountifully supplied with written briefs and arguments on behalf of all the parties. Mr. Smallwood, now deceased, at the conclusion of the hearing before the Commission on December 6, 1961, asked and was granted time in which to file a brief and written argument in support of the contentions of the landowners. On page 2 of that brief, it is stated:

"The landowners' theory of this case is that Tract No. 821 is a component and essential part of a single economical unit and that when the unit was deprived of the contribution that Tract No. 821 made to the unit, the remainder was damaged."

Counsel, in support of that contention, quoted rather extensively from the instructions which the court had given the Commission as the rules of law which the Commission should apply to the facts found by it. No objection was made to any of the instructions.

In paragraph V of the report the Commission discussed the controlling decisions governing a claim for severance damages. After citing and quoting from such cases as Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336; United States v. Mills, (8 Cir.1956), 237 F.2d 401; Baetjer v. United States, (1 Cir.1944), 143 F.2d 391; Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644; United States v. Inlots, Fed.Cas.No. 15,441A, aff'd on points, Kohl v. United States, 91 U.S. 367, 23 L.Ed. 449; Cole Investment Company v. United States, (9 Cir.1958), 258 F.2d 203; United States v. Honolulu Plantation Co., (9 Cir.1950), 182 F.2d 172, cert. den. 340 U.S. 820, 71 S.Ct. 51, 95 L.Ed. 602; and United States v. Waymire, (10 Cir.1953), 202 F.2d 550, the Commission stated:

"It is the conclusion of the Commission that under the law it is a question of fact as to whether the two parcels of land described here constitute a single tract or unit, and all the facts and circumstances shown by the evidence must be considered in making that determination."

Following the filing of the report by the Commission, the landowners filed objections thereto attacking the findings

of fact set forth in subparagraphs 6, 7, 8, 9, 10, 12 and 14 of paragraph VI. In numbered paragraph 7 of the objections, the landowners have alleged:

"The findings of fact and/or conclusions of law set forth in paragraphs VII and VIII of the report are clearly erroneous and against the preponderance of the evidence and are contrary to the law governing the only issue herein, i. e., the amount of just compensation to which these landowners are entitled as a result of the taking of their property for public use."

In paragraph 9 of the objections the landowners claim that the court should modify the report of the Commissioners by making proper findings of fact and entering judgment for the landowners in an amount which will afford them just compensation for their lands.

In paragraph 10 of the objections the landowners state:

"In the alternative, the landowners respectfully request that the Court 'receive further evidence' on the issue of just compensation as it is authorized to do under the provisions of Rule 53(e) (II) of the Federal Rules of Civil Procedure. In this connection, attention is called to the fact that the landowners have had no opportunity to offer evidence with respect to the fair market value of the 159 acres embraced within Tract No. 821 inasmuch as the Commission did not rule on the issue of unity of use and severance damages prior to conclusion of the reception of the landowners' evidence, as would have been the case had this cause been tried to a jury. At the least, they should be afforded the opportunity to offer their evidence of the fair market value of the 159-acre tract as of the date of taking."

The learned counsel now representing the landowners, in their brief in support of the objections above referred to, asked the court to consider the brief on behalf of the property owners that was filed with the Commission by the late J. M. Smallwood, which the court has done.

At page 3 of the brief submitted in support of the objections, counsel stated:

"It is true here as in most cases that a multitude of decisions, pronouncements and holdings can be found in the books touching upon the various contentions of adverse parties. And it is sometimes found that a single decision will serve to put the four corners of a current controversy into clear focus and lead to its proper resolution. United States v. Waymire, et al., (C.A.10, 1953) 202 F.2d 550, may serve such a purpose here."

The Waymire decision is the only one cited by the landowners in support of their objections. They copy extensively from the opinion, to which further reference hereinafter will be made by the court.

The parties seem to be in agreement as to the manner in which the court should consider the report of the Commission. In United States v. 992.61 Acres of Land, More or Less, in Johnson and Logan Counties, Arkansas, and Kenneth Hesse, et al., (W.D.Ark.1962) 201 F.Supp. 578, the court beginning on page 579 quoted from and discussed the various decisions which clearly outline the duty of the court in the consideration of a report of a Commission appointed under Rule 71A(h). In that opinion this court quoted from 202 F.2d page 553 of the Waymire case, supra, as follows:

"It is thus clear that the report of the commission in a case of this kind shall be dealt with in the same manner as that of a master appointed under Rule 53. It is historic practice of long standing to call to the assistance of courts masters to pass upon certain classes of questions, one of the most common being the amount of damages. While the report of a master is essentially advisory in nature, it has not been the practice to disturb his findings when they are properly based upon

evidence, unless there be errors of law. And prior to the adoption of the rules of civil procedure a party did not have the absolute right to demand that the court redetermine the facts thus found. Under the plain language of Rule 53, it is the duty of the court to accept the findings of fact made by a master unless they are clearly erroneous. But the findings of a master may be modified in part, or rejected in toto, if they are clearly erroneous. In like manner, under the equally clear language of Rule 71A(h), the findings and awards of a commission shall be accepted unless they are clearly erroneous. But they may be modified in part, or rejected in toto, if they are clearly erroneous. And even though there is evidence to sustain findings of a master or a commission, as the case may be, they are clearly erroneous if the reviewing court on the entire evidence has the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746; United States v. Oregon State Medical Society, 343 U.S. 326, 339, 72 S.Ct. 690, 96 L.Ed. 978."

[1] The court has carefully considered the entire record in an effort to determine whether the findings are properly based upon the evidence before the Commission, and even though there is evidence to sustain the findings of the Commission, whether the findings are clearly erroneous and whether the Commission has committed an error of law. If the court after such consideration has the definite and firm conviction that a mistake has been committed by the Commission, it is its duty to reject in whole or in part the report and receive further evidence or recommit the question to the Commission with further instructions.

■ ■ Naturally, in the consideration of the report, the court must first determine whether the findings of fact are adequate and cover every question of fact necessary to be resolved. In this case, without doubt, the findings of fact are entirely adequate notwithstanding the landowners now claim that they should be afforded an additional day in court for the purpose of introducing testimony as. to the market value of Tract No. 821 standing alone. However, it will be remembered that learned counsel for the landowners went into the hearing and contended throughout the hearing that the only question for determination was that of severance damage to the Pope County land. Apparently the landowners were satisfied with the testimony offered by the plaintiff as to the value of Tract 821 standing alone, and should not be permitted at this late date to reopen the proceedings for the purpose of introducing further testimony as to the market value of that tract.

In United States v. Mills, (8 Cir. 1956) 237 F.2d 401, the court at page 404 said:

"The law seems to be well settled that, in determining just compensation in eminent domain proceedings, for the taking of a part only of a 'tract' of land, considerations must be limited to that 'tract' alone, and may not regard effect upon any other tract which has been used and treated as, and is, in fact, a separate and distinct tract, even though it may be adjacent or even contiguous and in the same ownership. United States v. Miller, 317 U.S. 369, 375–376, 63 S.Ct. 276, 87 L.Ed. 336; Sharpe v. United States, 3 Cir., 112 F. 893, 896, affirmed 191 U.S. 341, 354, 24 S.Ct. 114, 48 L.Ed. 211; Baetjer v. United States, 1 Cir., 143 F.2d 391, 394–395, certiorari denied 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618; United States v. Honolulu Plantation Co., 9 Cir., 182 F.2d 172, 178–179, certiorari denied 340 U.S. 820, 71 S.Ct. 51, 95 L.Ed. 602; International Paper Co. v. United States, 5 Cir., 227 F.2d 201, 205–206.

"The Supreme Court said in the Miller case, 317 U.S. at pages 375–376, 63 S.Ct. at page 281:

" 'Courts have had to adopt working rules in order to do substantial justice in eminent domain proceedings. One of these is that a parcel of land which has been used and treated as an entity shall be so considered in assessing compensation for the taking of a part or all of it.

" 'This has begotten subsidiary rules. If only a portion of a single tract is taken the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract. Such damage is often, though somewhat loosely, spoken of as severance damage. On the other hand, if the taking has in fact benefitted the remainder the benefit may be set off against the value of the land taken.

" 'As respects other property of the owner consisting of separate tracts adjoining that affected by the taking, the Constitution has never been construed as requiring payment of consequential damages; and unless the legislature so provides, as it may, benefits are not assessed against such neighboring tracts for increase in their value.' "

In the Mills case the trial court had held as a matter of law that the two parcels of land, divided by the levee, constituted two tracts. On appeal, the court held that the question was not one of law but one of fact, and quoted from Sharpe v. United States, supra, as follows:

" 'If the evidence were such as to leave it a matter of some doubt whether the land owned by the plaintiff in error were one tract or separated into three separate and distinct tracts, it would be proper to leave that question to the jury * * *.' "

In United States v. Honolulu Plantation Company, supra, the court in referring to Baetjer v. United States, supra, at pages 179–180 of 182 F.2d said:

"The mirage conjured up by the experts and attorneys from the Baetjer case, supra, which gave fallacious promise of damages, is evanescent. It disappears and the familiar and long standing landmarks of condemnation law appear undistorted upon closer contemplation. There all the land involved was owned in fee by one individual. If all had been in one contiguous tract, the rule of deducting the market value of the residuary tract, after taking, from that of the entire tract, before taking, would have been applied. The trial judge there excluded evidence which tended to show integration of the scattered tracts in a unified whole by business use. The Appellate Court applied hornbook law and reversed. In sending the case back, it was clearly stated compensation could not be paid for losses of a business. The trial court then retried the case and found no loss beyond the value of the part taken was sustained by the part which remained. These principles applied are not only correct; these are classic."

In paragraph VII of the report, as heretofore set forth, the Commission specifically found that Tract 821 in Johnson County and Pope County lands did not constitute a unit within the rule of law permitting severance damage to the Pope County land, and the court is convinced that such finding is supported by the evidence and inferences flowing therefrom, but even though Tract 821 in Johnson County and the Pope County lands should be considered as a unit for the purpose of determining severance damage, the finding of the Commission is that the headquarters (Pope County land) was as valuable after the taking of Tract 821 as it was before the taking of said tract. It is undisputed that the Pope County lands are in fact being utilized today in the operation of an experimental breeding farm, and that

the market value of the Pope County lands has not been reduced by their conversion from a registered Hereford breeding farm to an experimental breeding farm. In other words, there is no severance damage if the market value of the land remaining is the same. Cole Investment Company v. United States, supra, and United States v. Honolulu Plantation Company, supra.

As hereinbefore stated, the landowners rely almost entirely upon United States v. Waymire, supra, but the facts as stated in the opinion are not sufficient to convince this court that under the evidence in the record before this court the Commission was in error in the findings of fact and the conclusions reached.

In Waymire, apparently several large tracts were included in the same hearing before the Commission. Extended hearings were held, and the Government filed exceptions to the awards. The trial court set aside an award to Mrs. Waymire and her husband for severance damage for the lands owned by them, reduced the awards made for four tracts, and sustained the remaining awards.

In discussing the contention as to whether a Commission should be appointed, the court at page 552 of 202 F.2d stated the facts as follows:

"* * * Not all of the land was taken. In some instances, not all of the land of the same kind was taken. In some instances only part of the bottom land was taken, in some only part of the meadow land was taken, in some only part of the bench land was taken, in some only part of the grazing land was taken, and in some the land not taken was left in the form of a small, separated, and isolated tract or strip almost useless and of little value as a constituent part of the ranch to which it previously belonged."

The landowners do not expressly contend that the business losses, if any, sustained by them by reason of the taking of Tract 821 are recoverable, but inherent in the testimony of Mr. Savage as well as of Governor Turner and Mr. Lewis is the idea that the primary loss sustained by the landowners resulted from the cessation of the operation of the registered Hereford breeding farm and the change to the use of the Pope County lands for the operation of an experimental breeding farm, but at the same time admitted that the improvements on the Pope County lands were utilized and were needed in the operation of the experimental breeding farm.

■ It has long been held that proof of business losses is not admissible and such losses are not an element of just compensation. Bothwell v. United States, (1920) 254 U.S. 231, 233, 41 S. Ct. 74, 65 L.Ed. 238; Mitchell v. United States, supra; United States ex rel. TVA v. Powelson, (1943) 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390; United States v. General Motors Corp., (1945) 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311; United States v. Petty Motor Co., (1946) 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729; Winn v. United States, (9 Cir.1959) 272 F.2d 282.

In paragraph V of the report, the Commission stated:

"The statutes under which the land is taken in this case do not provide for compensation for loss or destruction of business. The compensation to which the landowner is entitled is only that which is guaranteed him under the 5th Amendment to the Constitution."

■ Therefore, since the court is convinced that the findings and award of the Commission are not clearly erroneous, it is the duty of this court to approve and confirm the findings of fact and award as made by the Commission.

An order is being entered today overruling the objections of the landowners to the report of the Commission and adopting, confirming and approving the report fixing the just compensation of the landowners in the sum of $11,400.00.