UNITED STATES of America, Plaintiff,

v.

992.61 ACRES OF LAND, MORE OR LESS, IN JOHNSON AND LOGAN COUNTIES, ARKANSAS, and Kenneth Hesse et al., Defendants.

Tracts Nos. 812, 812E-1, 812E-2.
B. W. Troglin, Former Owner and Condemnee.

No. 1549.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Jan. 30, 1962.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

James K. Young, Russellville, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

On August 31, 1961, the Commissioners heretofore appointed to hear the testimony and determine just compensation for the above-named tracts, filed their report herein.

In the concluding paragraph numbered 8, the Commissioners stated their conclusion as follows, "that the fair and reasonable market value of the one hundred fifty-three acre tract as of the date of taking is the sum of Nineteen Thousand Five Hundred Dollars ($19,500.00) and that the value of the remainder is Forty-five Hundred ($4,500.00) and that the just compensation for the lands taken is the sum of Fourteen Thousand Dollars ($14,000.00)." It is apparent that a mathematical error was committed in subtracting the value of the remainder, $4,500.00, from the value of the tract prior to the taking, and the just compensation actually intended to be awarded is $15,000.00.

On September 11, 1961, Mr. James K. Young, attorney for Mr. Troglin, filed exceptions to the report, and therein asked that the court take such action on the objections as may be proper; that the findings of fact and conclusions of law of the Commissioners be set aside;

that the court make its own findings of fact and conclusions of law upon the evidence reported herein, or, in the alternative, recommit the cause to the Commissioners with instructions to make new findings of fact and conclusions of law.

On September 11, 1961, Mr. Young filed a motion asking that the court fix a date for a hearing on the objections. Accordingly a hearing was set for November 15, 1961, and at the hearing the United States Attorney and Mr. Young agreed that the report of the Commissioners and the objections thereto should be submitted to the court upon a transcript of the testimony and upon briefs for the parties.

The transcript of the testimony has been received along with the briefs of the attorneys for the respective parties, and the court has read with interest and care the transcript and has considered the objections to the report, which have been ably and earnestly presented by the attorney for the defendant.

There does not seem to be any conflict between the parties as to the status of the report of the Commissioners and the limitations upon the court in the consideration of the report.

■ In United States v. Waymire, 202 F.2d 550 (10 Cir. 1953), the court, after reviewing the provisions of Rule 71A (h) of the Federal Rules of Civil Procedure, 28 U.S.C.A. in connection with Rule 53, held at page 553:

> "It is thus clear that the report of the commission in a case of this kind shall be dealt with in the same manner as that of a master appointed under Rule 53. It is historic practice of long standing to call to the assistance of courts masters to pass upon certain classes of questions, one of the most common being the amount of damages. While the report of a master is essentially advisory in nature, it has not been the practice to disturb his findings when they are properly based upon evidence, unless there be errors of law. And prior to the adoption of the

rules of civil procedure a party did not have the absolute right to demand that the court redetermine the facts thus found. Under the plain language of Rule 53, it is the duty of the court to accept the findings of fact made by a master unless they are clearly erroneous. But the findings of a master may be modified in part, or rejected in toto, if they are clearly erroneous. In like manner, under the equally clear language of Rule 71A(h), the findings and awards of a commission shall be accepted unless they are clearly erroneous. But they may be modified in part, or rejected in toto, if they are clearly erroneous. And even though there is evidence to sustain findings of a master or a commission, as the case may be, they are clearly erroneous if the reviewing court on the entire evidence has the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746; United States v. Oregon State Medical Society, 343 U.S. 326, 339, 72 S.Ct. 690, 96 L.Ed. 978."

In this connection, see Cunningham v. United States, 270 F.2d 545 (4 Cir. 1959); United States v. Certain Parcels of Land in the City of Philadelphia, 215 F.2d 140 (3 Cir. 1954); 7 Moore's Federal Practice, 2d Ed., p. 2798.

It should be remembered that Rule 71A (h), Fed.R.Civ.P., provides that the commission shall have the powers of a master as provided in subdivision (c) of Rule 53, and paragraph 2 of subdivision (e) of Rule 53 provides:

> "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous."

In McGraw-Edison Co. v. Central Transformer Corp., (E.D.Ark.1961), 196 F.Supp. 664, Judge Henley completely and thoroughly outlined the duties of a court in considering exceptions or objections to a master's report. It is a succinct statement of the duties and respon-

sibilities of a court in considering exceptions.

See also footnote 3 in Bynum v. Baggett Transportation Co., 228 F.2d 566 (5 Cir.), where at page 569 the court said:

"The district court does not have the right to reconsider, weigh and evaluate evidence to arrive at its own independent conclusions, but must accept those of the Master unless clearly erroneous." (Citing many cases.)

Without a doubt the highest and best use to which the land involved herein could be put was dairy farming, such as was being carried on by the defendant on the date of taking. In fact, there does not seem to be any substantial dispute between the parties here as to many of the facts, such as the location of the land, the acreage involved, and the description of the land and improvements as given by the various witnesses for both the plaintiff and the defendant.

The real question in issue is whether the amount awarded is just compensation.

In Olson v. United States, 292 U.S. 246, at page 255, 54 S.Ct. 704, 78 L.Ed. 1236, the court defined just compensation, as follows:

"Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined. The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which. the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held.

Mississippi & R. R. Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206; Clark's Ferry Bridge Co. v. Public Service Commission, 291 U.S. 227, 54 S.Ct. 427, 78 L.Ed. 767. 2 Lewis, Eminent Domain (3d Ed.) § 707, p. 1233; 1 Nichols, Eminent Domain, (2d Ed.) § 220, p. 671."

In State of Nebraska v. United States, (8 Cir.1947), 164 F.2d 866, the court at page 868 said:

"The general federal rule of compensation for condemnation of a fee is well settled. The measure of 'just compensation' under the Fifth Amendment for the taking of property in fee simple ordinarily is the fair market value (or, as sometimes expressed, 'market value fairly determined') of the property in fee ownership as of the time of taking irrespective of the number and kind of interests existing in it." (Citing many cases.)

The defendant strenuously contends that the total acreage from which the tracts were taken constituted a unique unit, and apparently in the estimation of the defendant was of exceptional value to him. In United States v. 711.57 Acres of Land (N.D. Cal.1943), 51 F.Supp. 30, the court at page 32 said:

"The special adaptability to his own use, of land, with which an owner is reluctant to part, is not an element to be taken into account in reaching fair market value." (Citing United States v. Miller, hereinafter referred to.)

In United States v. 11 Acres of Land, (E.D.N.Y.1944), 54 F.Supp. 89, 92, the defendant contended that the subject property was of "a specialty character which should be appraised at the fair market value of the land, and the cost of reproduction of the improvements thereon, less depreciation." The court held that it is true that such a rule prevails as to specialty property, such as churches, schools, clubhouses, and in some cases public utility plants, and stated "but that is not the test, as it is

not the special value to the owner or to the taker that fixes the value in a condemnation proceeding, the test being just compensation, which is ordinarily fair market value."

In United States v. Petty Motor Co., 327 U.S. 372, at page 377, 66 S.Ct. 596, 90 L.Ed. 729 (1946), the court said:

"The Constitution and the statutes do not define the meaning of just compensation. But it has come to be recognized that just compensation is the value of the interest taken. This is not the value to the owner for his particular purposes or to the condemnor for some special use but a so-called 'market value.' It is recognized that an owner often receives less than the value of the property to him but experience has shown that the rule is reasonably satisfactory. Since 'market value' does not fluctuate with the needs of condemnor or condemnee but with general demand for the property, evidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses are refused in federal condemnation proceedings." (Citing cases.)

In the case of United States v. Miller, 317 U.S. 369, at page 375, 63 S.Ct. 276, 87 L.Ed. 336, the court said:

"Again, strict adherence to the criterion of market value may involve inclusion of elements which, though they affect such value, must in fairness be eliminated in a condemnation case, as where the formula is attempted to be applied as between an owner who may not want to part with his land because of its special adaptability to his own use, and a taker who needs the land because of its peculiar fitness for the taker's purposes. These elements must be disregarded by the fact finding body in arriving at 'fair' market value.

"Since the owner is to receive no more than indemnity for his loss, his award cannot be enhanced by any gain to the taker. Thus although the market value of the property is to be fixed with due consideration of all its available uses, its special value to the condemnor as distinguished from others who may or may not possess the power to condemn, must be excluded as an element of market value."

The defendant Troglin and his witnesses, Laws, Hughes, and Hunt, fixed the value of the entire tract and the value of the remainder, and calculated the difference or the amount to be recovered as follows:

| Name | Value of Whole Before Taking | Value of Remainder | Amount of Damage |
|---|---|---|---|
| Troglin | $41,270.00 | $6,778.00 | $34,491.00 |
| Laws | 35,050.00 | 5,225.00 | 29,825.00 |
| Hughes | 36,670.00 | 7,302.00 | 29,368.00 |
| Hunt | 36,100.00 | 4,163.00 | 31,937.00 |

The witnesses for the plaintiff, Railey, Jordan and Gibson fixed the amount as follows:

| Name | Value of Whole Before Taking | Value of Remainder | Amount of Damage |
|---|---|---|---|
| Railey | $16,800.00 | $6,000.00 | $10,800.00 |
| Jordan | 19,500.00 | 7,320.00 | 12,180.00 |
| Gibson | 17,000.00 | 5,900.00 | 11,100.00 |

From the above it will be noted that there was a considerable difference in the values placed on the property by the various witnesses, which the Commission was required to consider in reaching its conclusion. The Commission heard the witnesses testify and had personally inspected the property, and they were in a much better position than the court to evaluate the testimony of the witnesses.

In the trial of condemnation cases, whether by jury or by Commission, there is usually a sharp dispute between the witnesses for the landowner and the witnesses for the Government. In the hundreds of tracts that have been condemned in this court in the various projects in the Western District of Arkansas, this sharp difference has arisen more often than not. Ofttimes the Government complains of the award, whether it be a verdict of a jury or an award by a Commission. Likewise, the landowner often complains that the verdict of the jury was wrong, or that the award of the Commission was not made upon a clear understanding, or as a result of error in the evaluation of the testimony. Often the value fixed by the landowner and his witnesses is inflated and likewise the values are often deflated by witnesses for the Government, because they all realize that in fixing just compensation the jury or a Commission will of necessity be compelled to evaluate all of the testimony and to consider the testimony of each and every witness and try to reconcile the testimony, if possible, but they also realize that if the testimony cannot be reconciled, then the factfinder is compelled to determine just compensation by the exercise of sound judgment. It appears to me that in this case the findings of the Commission are not clearly erroneous but are well within the range of the testimony.

Beginning on page 9 of the transcript, the defendant, Mr. Troglin, stated how he arrived at his value of the property before taking, as follows:

"I have approximately 50 acres of bottom land there that I feel like is worth $350.00 an acre which would figure out about $17,500.00. I have 111 acres of improved upland which I valued at $165.00 an acre which figured out approximately $16,995.00. The house is worth I figure $4,500.00. The fences, the outside fences I call them because they are the main outside fence and the cross fences at $1,375.00. The two ponds I figure are worth $300.00. The barns, I did not want to put too high a value on them so I put them down at $600.00.

"Q. What is the total of that?

"A. That is $41,270.00."

The same method was followed by Mrs. Laws (TR 23); Mr. Hughes (TR 33); and Mr. Hunt (TR 42). The results reached by the defendant, Mr. Troglin, and his witnesses does not represent just compensation. The property should have been considered as a whole and not valued in parcels. It is true, however, that each of the witnesses later expressed his opinion that the amounts arrived at by their calculations represented the market value of the property, but it is obvious that the opinion of the witnesses was based on the calculations as shown by their testimony.

It has not been argued that the Commission acted from a mistaken view of the law. In fact, the Commission set forth in paragraph 7 of its report the rule which it followed in arriving at its conclusions upon the facts.

Since the findings of fact are supported by substantial testimony and do not arise from a mistaken view of the law, it is the duty of the court to approve the report of the Commission and to overrule the objections and exceptions made by the defendant to such report.

As indicated at the very beginning of this discussion, the report of the Commission should be amended to fix just compensation for the taking, including severance damages, at the sum of $15,000.00, and, as so modified, the report is confirmed and approved, and just compensation for the taking, including severance damages, is fixed at $15,000.00.