**UNITED STATES of America,**
**Plaintiff,**

v.

**26.81 ACRES OF LAND, MORE OR LESS, IN BENTON COUNTY, ARKANSAS, Defendant.**

**UNITED STATES of America,**
**Plaintiff,**

v.

**318.98 ACRES OF LAND, MORE OR LESS, IN BENTON AND WASHINGTON COUNTIES, ARKANSAS, Defendant.**

Civ. A. Nos. 481, 495.
United States District Court
W. D. Arkansas,
Fayetteville Division.

March 3, 1964.

---

Charles M. Conway, U. S. Atty., Max E. Findley, Sp. Asst. to U. S. Atty., Fort Smith, Ark., for plaintiff.

Daily & Woods, Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

The motion of defendant, Silica Products Company, Inc., hereinafter referred to as Silica, was filed herein on January 24, 1964, for modification of the court's instructions to the Commissioners to whom the captioned cases have been assigned, or, in the alternative, that the issue of just compensation payable to this defendant for its property taken and damaged be withdrawn from the Commissioners and tried to the court without a jury.

The movant incorporated in its motion a full and complete brief in support of the motion. On February 3, 1964, the Government filed its response to the motion, and likewise incorporated in the response its brief and argument in opposition to the motion.

In 1933 Silica by mesne conveyance became the owner in and to 67 acres of land, more or less, included in the above captioned cases.

On February 16, 1948, Silica conveyed to Cecil A. Sigmon and wife the surface estate of the property. The deed conveying the surface estate contained the following description and reservation:

"That part of the W½ of the SW¼ lying South and West of White River and the South ¾ of the SE¼ of the SW¼, all in Section 12, Township 18 North of Range 29 West, reserving to the grantor all mineral rights to any minerals or valuable deposits located on or below the surface of the ground especially including silica sand, together with right of ingress and egress and the right to install such machinery and equipment as may be necessary for the operations and removal of the same."

On December 12, 1962, Civil Action No. 481 was commenced to obtain under the right of eminent domain the following tracts:

Tract 1517-1, containing 1.00 acre, fee simple title

Tract 1517-2, containing 5.25 acres, fee simple title

Tract 1517-3, containing 1.25 acre, fee simple title

Tract 1517E-1, containing 1.50 acres, perpetual flowage easement.

Tract 1517E-2, containing 7.00 acres, perpetual flowage easement.

The above tracts were taken out of a total ownership of approximately 24 acres, the surface estate of which was conveyed to Raymond and Helen A. Ford by Cecil A. Sigmon and wife subsequent to February 16, 1948.

Civil Action No. 495 was filed April 18, 1963, to obtain the following tracts:

Tract 1516, containing 26 acres, fee simple title, in which the surface estate was owned by Ervin and Pauline Dryer by conveyance from Sigmon.

Tract 1542, containing 8.5 acres, fee simple title, in which the surface estate was owned by James M. and Ada K. Reis by conveyance from Sigmon.

Thus the plaintiff has acquired in Civil Action No. 481 the fee simple title to 7.50 acres and a perpetual flowage easement to 8.50 acres. In Civil Action No. 495 it has acquired the fee simple title to a total of 34.5 acres, leaving 16.5 acres of the total ownership of 67 acres in which Silica was the owner of the mineral estate and the easement as heretofore set forth.

It will be noted that Silica in its motion in the alternative requested that the issue of just compensation be withdrawn from the Commissioners and tried to the court without a jury.

In United States v. 1,674.34 Acres of Land, etc., (W.D.Ark.1963) 220 F. Supp. 893, the court at page 896 referred to United States v. 561.14 Acres of Land, etc., (W.D.Ark.1962) 203 F.Supp. 673, where this court reviewed the various decisions in which the question of the appointment of a commission was considered, and reached a conclusion that commissioners should be appointed in the interest of justice and the facts as set forth in the various orders appointing them. The case dealt specifically with the situation existing in the Dardanelle . Dam and Reservoir Project, but the holding of the court is equally applicable to the Beaver Dam and Reservoir Project. Therefore, the alternative request contained in the motion of Silica should be denied, and an order to that effect is being entered today.

This brings the court to a consideration of Silica's request for modification of the court's instructions heretofore given to Commissioners as the rules of law to be applied by them to the facts found in various hearings conducted by them.

In view of the fact that Silica is the owner of all minerals in and upon the tracts involved herein, together with the mineral rights and minerals in 16.5 acres not taken, with the right of ingress and egress on the land and the right to install such machinery and equipment as may be necessary for the operation and removal of minerals, including Silica sand, and the surface estates acquired are burdened with an easement which gives Silica the power to destroy the surface in the process of recovery of the minerals, the court is of the opinion that Tracts Nos. 1517–1, 1517–2, 1517–3, 1517E–1 and 1517E–2 in Civil Action No. 481 should be consolidated for trial with Tracts 1516 and 1542 in Civil Action No. 495, and an order to that effect is being entered today.

In the second paragraph on page 4 of the general "Instructions" given to the Commissioners, the court, inter alia, instructed the Commissioners to make an award for each tract of land as a unit.

In the first full paragraph on page 6 the court, inter alia, instructed the Commissioners that in tracts where there is a divided ownership of lands and minerals, they should "first find the fair and reasonable market value of the tract as a whole, just as though all interests therein were owned by one person, disregarding the fact that one person owned the surface and another the minerals. After you have done that, you will apportion that amount by determining, for the purpose of such apportionment alone, the fair and reasonable market value of the outstanding mineral interest, taking into consideration outstanding royalty interests, if any, and that value will be the amount that the mineral owner is entitled to receive. You will then deduct that value from the value that you have previously found to be the fair and reasonable market value of the tract as a whole, and the difference will be what the surface owner will be entitled to receive."

Under the admitted facts in the instant case the court is of the opinion that it should specifically instruct the Commissioners as to the rule of law to be applied by them to the facts which they may find from the evidence, after a full and complete hearing on the issue of just compensation for the lands taken in the consolidated cases.

Said instructions should embrace and cover the following situation. If the Commissioners should find from the evidence that the mineral estate owned by Silica has no market price, then recourse must be had to other means of ascertaining value.

In United States v. Miller, (1943) 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, the court, beginning at page 373 of 317 U.S., at page 279 of 63 S.Ct., 87 L.Ed. 336 said:

"The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation. Such compensation means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuni-

arily as he would have occupied if his property had not been taken.

"It is conceivable that an owner's indemnity should be measured in various ways depending upon the circumstances of each case and that no general formula should be used for the purpose. In an effort, however, to find some practical standard, the courts early adopted, and have retained, the concept of market value. The owner has been said to be entitled to the 'value,' the 'market value,' and the 'fair market value' of what is taken. The term 'fair' hardly adds anything to the phrase 'market value,' which denotes what 'it fairly may be believed that a purchaser in fair market conditions would have given,' or, more concisely, 'market value fairly determined.'

" * * * Where, for any reason, property has no market, resort must be had to other data to ascertain its value; and, even in the ordinary case, assessment of market value involves the use of assumptions, which make it unlikely that the appraisal will reflect true value with nicety. It is usually said that market value is what a willing buyer would pay in cash to a willing seller. Where the property taken, and that in its vicinity, has not in fact been sold within recent times, or insignificant amounts, the application of this concept involves, at best, a guess by informed persons."

See, also, Kimball Laundry Co. v. United States, (1949) 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765.

In United States v. 620.00 Acres of Land, etc., (W.D.Ark.1952), 101 F.Supp. 686, this court beginning at the bottom of page 689 said:

"Evidence as to the quantity and quality of limestone deposits was relevant and material, and, therefore, to be considered by the jury, only in so far as it affected the fair market value of the property on the date of taking. That is, how it af-fected the price that a willing buyer would pay in cash or its equivalent to a willing seller. Such a result would necessarily depend upon whether the property was reasonably suitable as a quarry site and whether there was an existing market for the stone, or if not, whether such a market was so reasonably probable as to have an effect upon the market value of the land at that time. As stated in United States v. Foster, 8 Cir., 131 F.2d 3, 5: 'In determining the value of land taken by eminent domain, the jury may consider all uses to which it is adapted and might be put, and may award compensation upon the basis of its most advantageous and valuable use. To warrant the admission of testimony as to value for purposes other than that for which it is actually used, however, regard must be had for the existing conditions and wants of the community, or such as may reasonably be expected in the immediate future. The uses considered in fixing value must be so reasonably probable as to have an effect upon the present market value of the land and a speculative value cannot be considered. Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 709, 78 L.Ed. 1236. In order to warrant taking into consideration claimed special adaptability in fixing value, it must appear that the market value has been thereby enhanced.' "

On page 691 this court said:
" * * * And, on a new trial the landowner will be expected to present her case in accordance with the principles set forth in this opinion. That is, while testimony as to the quantity and quality of the limestone deposits will be admitted, testimony as to value should be directed to the accepted test—the price the property would have brought in the market on December 8, 1947, between a willing buyer and a willing seller. The evidence must be more specific as to the suitability and

availability of the property for a quarry, considering all factors, such as but not necessarily limited to plant expense, operation expense, transportation, and the presence or reasonable probability of a commercial market, * * *.''

In United States v. 992.61 Acres of Land, etc., (W.D.Ark.1962) 201 F.Supp. 578, 581, this court quoted from United States v. Petty Motor Co., 327 U.S. 372, at page 377, 66 S.Ct. 596, at page 599, 90 L.Ed. 729 (1946), as follows:

" 'The Constitution and the statutes do not define the meaning of just compensation. But it has come to be recognized that just compensation is the value of the interest taken. This is not the value to the owner for his particular purposes or to the condemnor for some special use but a so-called "market value." It is recognized that an owner often receives less than the value of the property to him but experience has shown that the rule is reasonably satisfactory. Since "market value" does not fluctuate with the needs of condemnor or condemnee but with general demand for the property, evidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses are refused in federal condemnation proceedings.' "

■ The easement of Silica to mine and for access and use of the surface estate by its very nature has a potential for damaging or destroying the surface estate. In this respect it is similar to a flowage easement, although its potential for damage or complete destruction if utilized might not be as great as that inflicted by flowage easements. The underlying principle is the same, and the tests used in those cases should apply here. The easement is not a separate right. It is a part of the mineral estate owned by Silica and it should be evaluated as such. Therefore, in ascertaining just compensation for the surface estates, consideration must be given to the effect that the easement has on the market value of the surface estate. Of course, the Commission may consider the probabilities of the actual exercise of the mining easement, and in that way determine the relationship the easement has to the value of the surface fee. See, United States v. 4.553 Acres of Land, etc., (N.D.Calif.1962) 208 F.Supp. 127.

In determining the severance damage, if any, to the 16.5 acres of the mineral estate that is taken, you should consider the effect, if any, of the taking of the 50.5 acres. The court in its original instructions to the Commissioners stated that they should take into consideration all elements of value as shown by the evidence to have existed in the lands at the time of the taking; "but elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration because to consider them would be to allow speculation and conjecture to become a guide in ascertaining the value of the lands, which should not be done."

■ This should be sufficient for the Commissioners to exclude from consideration evidence of anticipated profits from the sale of the sand in the event it is mined, and any evidence of the present value of anticipated profits should be excluded.

As heretofore stated, the court will prepare supplemental instructions in accordance with the above and furnish the parties and the Commissioners with a copy of the same and this memorandum, which supplemental instructions should be considered in connection with the original instructions heretofore given. However, the order of the court heretofore directed to be entered will not include such instructions.