UNITED STATES of America, Plaintiff,

v.

26.81 ACRES OF LAND, MORE OR LESS, IN BENTON COUNTY, ARKANSAS, and the Koch Company, a Corporation, et al., and Unknown Owners, Defendants.

UNITED STATES of America, Plaintiff,

v.

318.98 ACRES OF LAND, MORE OR LESS, IN BENTON AND WASHINGTON COUNTIES, ARKANSAS, and Stanley C. Johnson et al., and Unknown Owners, Defendants.

Civ. Nos. 481, 495.

United States District Court
W. D. Arkansas,
Fayetteville Division.

Aug. 30, 1965.

Charles M. Conway, U. S. Atty., Fort Smith, Ark., Max E. Findley, Sp. Asst. to U. S. Atty., Muskogee, Okl., for plaintiff.

Daily & Woods, Fort Smith, Ark., for Silica Products Co.

JOHN E. MILLER, Chief Judge.

Silica Products Company, Inc., (hereinafter referred to as Silica) on January 24, 1964, filed a motion for modification of the court's instructions to the Commission, or, in the alternative, that the issue of compensation be withdrawn from the Commission and tried to the court without a jury. The ownership of the parties in all the tracts in these two actions is set out in detail in the court's opinion in 226 F.Supp. 829. The additional instructions that were given to the Commission as a result of the consideration of the motion of Silica appear in the report of the Commission, beginning on page 29 and designated as Addendum No. 3.

Following the decision of the court on March 3, 1964, in 226 F.Supp. 829, the

Commission proceeded to hold a hearing for the purpose of ascertaining just compensation. The hearing began on April 13 and was concluded April 16. On May 4, 1964, the report of the Commission was filed.

In awarding just compensation for the surface estate the Commission stated:

"Therefore, the Commission fixes just compensation to the surface owners in Tract No. 1516 (Dyer) at $2,800 and fixes just compensation for the surface owners in Tract No. 1542 (Reis) at $4,400. With respect to Tract No. 1517 (Ford), the Commission finds that the fair market value of the surface from which Tracts Nos. 1517–1, 1517–2, 1517–3, 1517E–1, and 1517E–2 are taken is $13,600, and the fair market value of the remainder is $3,600 on the date of the taking, and therefore fixes just compensation for the taking of Tracts 1517–1, 1517–2, 1517–3, 1517E–1, 1517E–2 in the sum of $10,000."

There were no objections or exceptions filed to the above awards as to the surface estates, and the court is of the opinion that the findings and conclusions of the Commission fixing compensation for the surface estates, as above set forth, are supported by substantial testimony and are not clearly erroneous. The court, therefore, adopts and approves the awards as to the surface estate, and a separate judgment will be entered fixing just compensation for the surface estate as set forth above. This leaves for consideration the value of the mineral estate in Tracts 1516, 1517–1, 1517–2, 1517–3, 1517E–1, 1517E–2, and 1542.

On May 12, 1964, the Government filed its objections to the report of the Commission. On May 14, 1964, Silica filed a preliminary response to the objections, in which it requested that consideration of the objections be deferred until a transcript of the evidence could be obtained, and that the court extend the time for it to file objections to the report of the Commission for a period of five days from May 13, 1964. The court extended

the time for the filing of objections, and on May 18 Silica filed its objections to the report of the Commission.

The Government strenuously objects to (1) the failure of the Commission to sustain the Government's motion to strike the testimony of Mrs. Mertie A. Harris, Sam C. Cook, Jr., Charles E. Baxter, Jr., and Robert L. Markland; (2) to Finding of Fact No. 7 on the ground that such finding of fact was not supported by any competent evidence and was contrary to the clear weight of all the evidence; (3) that the Commission's Finding of Fact No. 8 is unsupported by any competent evidence and is contrary to the clear weight of all the evidence; (4) that the Commission committed error in failing to sustain the Government's motion at the conclusion of all of the evidence that it enter an award for the taking of the mineral estate underlying the tracts for an amount no greater than the Government's testimony, which was zero; (5) that the Commission totally failed to reveal the reasoning it used in deciding that Silica should be awarded $35,000 rather than some other amount; (6) that the award is clearly erroneous (a) as there was no acceptable "unity of use" between the particular 67 acres of silica sand and the silica sand plant owned by Silica at Guion, Arkansas; (b) that there could be no severance damages to the small amount of land owned in fee simple by Silica upon which its plant is located near Guion, Arkansas; (c) that under the valid findings of fact the award to Silica is speculative and conjectural; (d) that the award rests on a conclusion as to damages to Silica which are a consequence of the taking and therefore noncompensable; and (e) that the award to Silica, under the findings of the Commission, is not based alone on the fair market value of the estate taken but rather on special value personal to the condemnee.

The objections of Silica are as follows:

"I. The Commission's finding of fact No. 10 is contrary to the clear weight of all of the evidence, the vast preponderance of the evidence, and is clearly erroneous. This finding is based solely upon opinion evidence that is demonstrated by the other evidence to be purely speculative and conjectural.

"II. The Commission's finding of fact No. 14 is vague and ambiguous, the term 'immediate vicinity' not being defined. If it is meant within a few miles of the deposit, then the finding is irrelevant. If the term means within the actual market area of Silica Products Company on the date of the taking, then the finding is clearly contrary to all of the evidence in the record and clearly erroneous.

"III. The Commission's finding of fact No. 21 is contrary to the clear weight of all of the evidence. Finding 21 ignores the principle of law that knowledge in the neighborhood of the imminence of the building of the condemnor's project and the resultant taking long before the date of taking, and the effect of this general public knowledge upon the value of the lands taken or the use of the lands taken, is not to be considered.

"IV. The Commission's finding of fact No. 22 is contrary to the clear weight of all of the evidence, and contrary to the vast preponderance of the evidence, and is clearly erroneous."

The Government has furnished to the court a complete transcript, consisting of 815 pages, along with Government Exhibits 1 through 10, inclusive, and Silica's Exhibits 1 through 25 inclusive. The parties have submitted excellent briefs and extensive arguments in support of their respective contentions. The court has considered the contentions of the parties and has examined with care the authorities cited in support of their respective contentions.

The 67-acre tract is sometimes referred to as "Martin's Bluff on the White River." The tract is approximately seven miles northeast of Springdale, Arkansas, through which city the Frisco Railroad

runs. Silica has been engaged in the sole business of mining, processing, and selling silica sand principally to glass manufacturers and foundries since prior to 1930. Its mining operations and processing plant has been located at Guion, Arkansas, on the Missouri Pacific Railroad during this period, and for about ten years Silica also operated a small plant at Everton, Arkansas, but because of the abandonment of the Missouri & Arkansas Railroad, the plant at Everton was closed. The Guion plant consists of extensive processing, purifying, screening, grading and mixing equipment and machinery affixed to the realty at the plant site adjacent to the Missouri Pacific Railroad. The processing plant at Guion, Arkansas, is more than 100 miles from the 67 acres involved herein. The so-called reserves or the amount of silica sand at Guion is practically inexhaustible. There the depth of the deposit is approximately 150 feet. The fee simple ownership at Guion is only approximately 40 acres. The remainder of the reserves, which total approximately 3,000 acres, are held under long-time mining leases. Of this acreage, 300 could be mined without having to move the plant. The reserves at Guion, or the sand available for processing, are sufficient to meet the present sales of silica for 50 to 100 years on the 300-acre tract alone.

Beginning at the bottom of page 5 of its brief, Silica stated:

"During the defendant's thirty-two years of ownership of the Martin's Bluff silica sand reserve, from the date of defendant's acquisition down to the dates of taking in these actions, this reserve has served the defendant with four uses which have substantially increased the overall value of the defendant's entire real property interests employed in its sole business of production and sale of silica sand, consisting of Martin's Bluff reserve, the fee owned reserves and leasehold reserves and the fee owned plant site and improvements thereon located at Guion, Arkansas. These uses have been: (1) serving

as an actual adequate proven reserve which Silica Products Company, Inc. could fall back on in the event of any change in circumstances interfering with its continued profitable operation at its Guion properties (mine disaster, abandonment of the branch of the Missouri Pacific Railroad serving Guion, increased freight rates, deterioration of the quality of the Guion reserve, etc.); (2) an additional separate reserve deposit sufficient to satisfy the defendant's glass manufacturing market (which customers, because of the nature of their operations, require their producers to demonstrate adequate reserves for a continuous fulfillment of their requirements of raw materials over long periods of time); (3) in obtaining much more favorable rates from the Missouri Pacific Railroad for the defendant's Guion plant to its markets to the northwest, west and southwest than would otherwise have been obtainable because of the strategic location of the Martin's Bluff reserve 100 plus miles to the west of Guion and located upon a competing railroad, the Frisco; (4) discouragement and prevention of a competitor entering the Springdale, Everton and Green Forest areas, where other deposits exist, by reason of the Martin's Bluff deposit ownership by an experienced and successful existing producer in the area. During these thirty-two years the Martin's Bluff property had been put to no other use by the defendant, independent of its overall silica sand producing properties and facilities."

In the course of the argument in support of its contention that the Commission's finding to the effect that the 67-acre tract and the plant site at Guion, Arkansas, constitute a single parcel is clearly erroneous as a matter of law, the Government at page 11 of its brief stated:

"It is quite obvious that the leased reserves at Guion are nearly inex-

haustible, and that the defendant's competitors in the three state area also have a similar quantity, and that the defendant's 67-acre deposit is not needed for the actual mining of silica sand; but, even if there were a need, it would be a *future* need—a planned use, which falls within the orbit of Cole Investment Co. v. United States, supra; and, even if there were a need for a plant in Northwest Arkansas, it doesn't follow that the defendant's 67-acre deposit would have to be the source of that supply. Hence, we are able to say, under the defendant's own theory, that the 67-acre deposit has one *highest and best use*, i. e., as a freight rate lever and shield against competition, while the plant site at Guion has a *different highest and best use*, which is the actual mining and processing of silica sand. Does this constitute that 'unity' of use that the courts have so struggled to define? We think not."

At page 23 of Silica's brief, learned counsel referred to the last seven lines of the above quotation, and stated that the above quotation could be more accurately stated in accordance with the evidence as follows:

" 'Hence, we are able to say, under the defendant's proof, that the 67 acre deposit has one highest and best use, i. e., furthering and aiding in the profitable production, processing, and sale of silica sand by the defendant by providing the defendant lower freight rates from its Guion plant to its markets to the northwest, west and southwest against its competitors to the north, west and southwest, and deterring competition midway between its Guion plant and its Oklahoma and Texas competitors, while the plant site at Guion has the same highest and best use, which is the profitable mining, processing and sale of silica sand, the profitability of which is substantially augmented by the Martin's Bluff strategically located

reserve. Does this constitute that "unity" of use that the courts have defined? We think so.' "

The report of the Commission contains a fair and sufficient abstract of the testimony, together with a thorough discussion of the principles of law that were considered in reaching its conclusions. By a vote of two to one, the Commission fixed just compensation for Silica at $35,000.

In the discussion appearing at the top of page 32 of the report, the following statement appears:

"A majority of the Commission finds that the use of the Springdale deposit as a freight rate lever and as a deterrent to competition is an integrated part of the overall use of lands and minerals owned by Silica Products Company, and the taking of these tracts has caused a substantial damage to be sustained by Silica Products Company. That the small remainder of this tract under which the minerals are owned by Silica Products Company is insufficient in size to serve the purposes for which the whole tract was used."

The Chairman of the Commission dissented from the conclusion of the majority, and in his dissent stated that he concurred with his fellow Commissioners in the enumerated findings of fact and that even though Silica may have sustained an actual loss, it is in the nature of a business loss. Its damage, if any, arises out of the loss of a "freight rate lever," which is to say that the profits of Silica from the operation of its plant at Guion are increased by lower freight rates. Any increase in freight rates caused by the taking will result in a diminution of profit from the Guion operation. The "deterrent" effect of the ownership of the 67 acres at Springdale is likewise a business loss. "I do not believe that the use of the ownership of this tract, isolated from a plant of the Silica Products Company by more than 100 miles, is to be considered as a unit on the basis of its use as a freight rate lever or a deterrent

to competition, but even if so the damages sustained are business losses."

As heretofore stated, the report contains specific findings of fact. The Government has objected only to Findings of Fact 7 and 8 and to the conclusion of the majority as hereinbefore set forth. Findings of Fact 7 and 8 are as follows:

"7. The ownership of this deposit has been beneficial to Silica Products in that it has been a useful lever in getting favorable freight rates from their Guion, Arkansas, plant.

"8. The ownership of this land by Silica Products Company has discouraged competitors and would-be competitors from establishing a silica plant in the area of Springdale."

Silica has objected to Findings of Fact 10, 14, 21 and 22, which are as follows:

"10. There are other silica sand deposits in the same area apparently similar in quality, depth and nature of overburden and thickness of vein."

"14. There is no market for the silica deposit involved in these tracts in the immediate vicinity."

"21. At the time of taking there was no likelihood of the surface being required for mining purposes within the foreseeable future."

"22. The evidence is insufficient to establish the economic feasibility of a plant at Springdale to be self-sustaining."

However, it will be noted that the Government in its brief contends that the report fails to reveal "the reasoning they (the Commissioners) used in deciding that the particular award to Silica Products Company should be 35,000 rather than some other figure." At page 29 of the brief of Silica, the following statement appears:

"Upon one point we must agree with the Government. The Commissioners' report does not meet the requirements of the Supreme Court of the United States in the recent case of United States v. Merz, et al., 376 U.S. 192 [84 S.Ct. 639, 11 L.Ed. 2d 629] (1964). The Commissioners did not set forth the basis of their reasoning in finding $35,000.00 to be just compensation for severance damages where the evidentiary range in the difference in before and after taking values is either between $100,-000.00 and $300,000.00, if the defendant's witnesses are found to preponderate; or nothing, if Mr. McElwaine is taken as gospel."

The court is of the opinion that the report is a sufficient compliance with Merz in that it specifically states the grounds upon which a majority of the Commission acted in fixing just compensation. The only defect in the report is that it does not disclose how the majority arrived at the award of $35,000, but if it should be determined by the court that the basis upon which the award rests is authorized under the law, the court would hesitate to reverse the case on that ground alone.

When a case has been referred to a Commission for a hearing and report under Rule 71A(h), "Its action and report shall be determined by a majority and its findings and report shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53."

Paragraph 2 of Rule 53(e) provides that:

"In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous."

This court has been required to review a great many reports of commissions appointed pursuant to the provisions of Rule 71A(h). In United States v. 992.61 Acres of Land, etc., (W.D.Ark.1962) 201 F.Supp. 578, the court quoted from and cited several cases defining the procedure to be followed by a reviewing court. See, also, United States v. 116.00 Acres of Land, (W.D.Ark.1964) 227 F.Supp. 100, 107; United States v. 561.14 Acres of Land, etc., (W.D.Ark.1962) 206 F.Supp. 816, 823.

In United States v. Rainwater, (8 Cir. 1963) 325 F.2d 62, the court at page 64 quoted with approval from United States v. Waymire, (10 Cir. 1953) 202 F. 550, as follows:

" 'Upon review, it was the duty of the court to accept the awards of the commission unless they were clearly erroneous in whole or in part because based upon a substantial error in the proceedings, because based upon a misapplication of the controlling law, because unsupported by substantial evidence, or because contrary to the clear weight of all the evidence. And while it was incumbent upon the court to proceed with due regard for these general principles, if on the whole record the court was clearly convinced that in fixing just compensation for the property taken the commission acted arbitrarily and without proper regard for the evidence, or that the awards were unsupported by any substantial evidence, or that they were against the clear weight of all the evidence, it was the duty of the court to modify them, reject them in whole or in part, receive further evidence, or recommit the matter to the commission with instructions.' "

With this rule in mind, the court finds that Findings of Fact Nos. 1, 2, 3, 4, 5, 6, 9, 11, 12, 13, 15, 16, 17, 18, 19, and 20 [1]

I. The Findings of Fact to which there were no objections are as follows:

"1.

"D. D. Dunkin acquired the fee simple title to the 67 acres involved in these three tracts in 1930, and his title is now vested in Silica Products Company, Inc.

2.

"Silica Products Company, Inc. conveyed the property so acquired to Cecil Sigmon in 1948, with the reservation set out in Exhibit #11 referred to above.

3.

"The surface owners of the respective tracts here involved derive their title by mesne conveyances from Sigmon. Each knew, or was charged with record notice, of the reservation.

4.

"The surface owners and their predecessors did not consider the minerals to be of any value, and bought and sold these properties on the assumption that the surface would never be disturbed by mining.

5.

"There is a deposit of silica sand under the 67 acres approximately 50 feet in thickness in two qualities: one suitable for glass manufacture in an estimated quantity of 2,700,000 tons; and the other suitable for foundry sand in a quantity estimated to be 3,800,000 tons.

6.

"Silica Products Company has not mined any silica from these tracts. It has not built any plant or made any physical use of the land.

*       *       *       *       *

9.

"The quantity of silica sand in the tracts involved in these cases is a very small part of the total reserves of Silica Products Company.

*       *       *       *       *

11.

"The silica in the tract designated on Exhibit #6 as 'A' might have been available to Silica Products Company for additional reserves, or it might have been available to an independent or competing silica company, particularly since these lands were being sold in the area as agricultural lands, including the entire fee simple estates.

12.

"A plant producing silica sand of the quality of that on the tracts here involved would have a freight differential in its favor over the plant at Guion to many of the existing markets of Silica Products Company, and would have a freight differential in its favor over existing freight rates from Mill Creek, Oklahoma, and existing rates from Pacific, Missouri (the two chief competitors of Silica Products in this area), to markets in Northwest Arkansas, Southwest Missouri, Eastern Kansas and Northeastern Oklahoma, including Fort Smith.

13.

"While there have been sales of fee simple title to the lands containing silica deposits in the area of Tract 'A' delineated on Government Exhibit #6, the existence or non-existence of such deposits was not an element of value considered by the buyer or seller.

*       *       *       *       *

15.

"The overburden on the tracts here involved is shale 15 or 16 feet thick, and the cost of removal for open pit mining

are not clearly erroneous and are supported by substantial evidence. This leaves for consideration only Findings of Fact Nos. 7, 8, 10, 14, 21 and 22, in addition to that part of a general finding by the majority of the Commission appearing on page 32 of the report, and heretofore set forth, to the effect that "the use of the Springdale deposit as a freight rate lever and as a deterrent to competition is an integrated part of the overall use of the lands and minerals owned by Silica Products Company, and the taking of these tracts has caused a substantial damage to be sustained by the Silica Products Company." This general unnumbered finding is somewhat related to Finding of Fact No. 12 and should be considered therewith.

Before further discussing the evidence and the findings of fact, it seems advisable to outline the principles of law that should be applied to the facts in order to determine whether the majority of the Commission was justified under the law and the facts in its finding that the 67-acre tract of land involved herein was an integrated part of the property of Silica located at Guion, Arkansas.

■ The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation, which means that the landowner should be awarded the full and perfect equivalent in money of the property taken by the Government. He is to be put in as good condition pecuniarily as he would have occupied if his property had not been taken. It may be necessary, in arriving at the amount to be awarded as just compensation, to consider various ways, depending upon the circumstances in each case, and no general formula can be adopted as a guide in each and every case. However, the courts, in an effort to find a practical standard, have adopted the concept of market value which means that the owner is entitled to be awarded the fair market value of the property taken. United States v. Miller, (1943) 317 U.S. 369, 373, 63 S.Ct. 276, 87 L.Ed. 336. Olson v. United States, (1934) 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236. The Fifth Amendment does not contain any standard of fairness for determining just compensation. The working rules that have been adopted by the courts in an effort to determine just compensation are nothing more than efforts on the part of the courts to arrive at equitable awards under the existing circumstances. In awarding just compensation, the courts should strive to be just to the public as well as to the individual. The word "just" preceding the word "compensation" as used in the Fifth Amendment evokes ideas of fairness and equity. United States v. Crance, (8 Cir. 1965) 341 F.2d 161, 165–166.

■ If only a part of a single tract is taken, the owner's compensation for the taking includes any and all elements of value arising out of the relation of the part taken to the entire tract. Such damages are often spoken of as "severance damages." United States v. Miller, page 376 of 317 U.S., p. 276 of 63 S.Ct.

In United States v. Mills, (8 Cir. 1956) 237 F.2d 401, at page 404 the court said:

"The law seems to be well settled that, in determining just compensa-

would be lower than underground mining.

16.

"There is an amply supply of water at the site of the silica deposit for production of a marketable product.

17.

"There is an adequate labor supply in the vicinity of Springdale for operation of a plant.

18.

"Since the deposit is not on a railroad, the cost of producing a marketable product would be increased by the cost of haul, in which the minimum would be about thirty cents per ton.

19.

"The cost of a plant to begin operations would be not less than $250,000 for a minimum plant, and under this evidence could be $400,000 for such a plant, and depending upon the size of the plant could range up to $1,000,000.

20.

"There is no evidence as to operation expense, cost of labor required, or other necessary expenses in processing the mineral deposit at Springdale."

tion in eminent domain proceedings, for the taking of a part only of a 'tract' of land, considerations must be limited to that 'tract' alone, and may not regard effect upon any other tract which has been used and treated as, and is, in fact, a separate and distinct tract, even though it may be adjacent or even contiguous and in the same ownership. United States v. Miller, 317 U.S. 369, 375–376, 63 S.Ct. 276, 87 L.Ed. 336; Sharpe v. United States, 3 Cir., 112 F. 893, 896, affirmed 191 U.S. 341, 354, 24 S.Ct. 114, 48 L.Ed. 211; Baetjer v. United States, 1 Cir., 143 F.2d 391, 394–395, certiorari denied 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618; United States v. Honolulu Plantation Co., 9 Cir., 182 F.2d 172, 178–179, certiorari denied 340 U.S. 820, 71 S.Ct. 51, 95 L.Ed. 602; International Paper Co. v. United States, 5 Cir., 227 F.2d 201, 205–206."

In Sharpe v. United States, (1903), 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211, the court approved the following language used by the Court of Appeals of the Third Circuit, Sharpe v. United States, (3 Cir. 1902) 112 F. 893, as follows:

"It is not denied that in rendering the 'just compensation' secured by the constitution of the United States to the citizen whose property is taken for public uses it is right and proper to include the damages in the shape of deterioration in value which will result to the residue of the tract from the occupation of the part so taken. In applying this rule, however, regard is had to the integrity of the tract as a unitary holding by the owner. The holding from which a part is taken for public uses must be of such a character as that its integrity as an individual tract shall have been destroyed by the taking. Depreciation in the value of the residue of such a tract may properly be considered as allowable damages in adjusting the compensation to be given to the owner for the land taken. It is often difficult, when part of a tract is taken, to determine what is a distinct and independent tract; but the character of the holding, and the distinction between a residue of a tract whose integrity is destroyed by the taking and what are merely other parcels or holdings of the same owner, must be kept in mind in the practical application of the requirement to render just compensation for the property taken for public uses. How it is applied must largely depend upon the facts of the particular case and the sound discretion of the court."

The court further said at page 355 of 191 U.S., at page 118 of 24 S.Ct.;

" 'It is an established rule in law, in proceedings for condemnation of land, that the just compensation which the land owner is entitled to receive for his lands and damages thereto must be limited to the tract a portion of which is actually taken. The propriety of this rule is quite apparent. It is solely by virtue of his ownership of the tract invaded that the owner is entitled to incidental damages. His ownership of other lands is without legal significance.' It is enough to say that, in our opinion, the two other farms or tracts of land owned by plaintiff in error constituted such separate and independent parcels, as regards the land in question, that they cannot properly be spoken of as the residue of a tract of land from which the land in question was taken."

The question before the court as to whether the 67-acre tract in question and the property of Silica located at Guion, Arkansas, constitute a single tract is as stated by the court in Baetjer v. United States, (1 Cir. 1944) 143 F.2d 391, at page 394:

"The first question before us here, therefore, and the basic one in all severance damage cases, is what constitutes a 'single' tract as distinguished from 'separate' ones. The answer does not depend upon artificial things like boundaries between

tracts as established in deeds in the owner's chain of title, (see United States v. Powelson, 4 Cir., 118 F.2d 79, 86, 87, reversed on other grounds, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390), nor does it depend necessarily upon whether the owner acquired his land in one transaction or even at one time. Sharpe v. United States, 3 Cir., 122 F. 893, 57 L.R.A. 932. Neither does it wholly depend upon whether holdings are physically contiguous. Contiguous tracts may be 'separate' ones if used separately (Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211) and tracts physically separated from one another may constitute a 'single' tract if put to an integrated unitary use or even if the possibility of their being so combined in use 'in the reasonably near future' (Powelson v. United States, 319 U.S. 266, 276, 63 S.Ct. 1047, 1053, 87 L.Ed. 1390) 'is reasonably sufficient to affect market value.' McCandless v. United States, 298 U.S. 342, 345, 56 S.Ct. 764, 765, 80 L.Ed. 1205. See also Stephenson Brick Co. v. United States, 5 Cir., 110 F.2d 360, 361; Grand River Dam Authority v. Thompson, 10 Cir., 118 F.2d 242, 244, 245; 18 Am.Jur., Eminent Domain, Sec. 270."

The court further stated at page 395:

"Integrated use, not physical contiguity, therefore, is the test. Physical contiguity is important, however, in that it frequently has great bearing on the question of unity of use. Tracts physically separated from one another frequently, but we cannot say always, are not and cannot be operated as a unit, and the greater the distance between them the less is the possibility of unitary operation, but separation still remains an evidentiary, not an operative fact, that is, a subsidiary fact bearing upon but not necessarily determinative of the ultimate fact upon the answer to which the question at issue hinges."

In United States ex rel. T. V. A. v. Powelson, (1943) 319 U.S. 266, at page 281, 63 S.Ct. 1047, at page 1055, 87 L.Ed. 1390, the court said:

"There are numerous business losses which result from condemnation of properties but which are not compensable under the Fifth Amendment. The point is well illustrated by two other lines of cases in this field. It is a well settled rule that while it is the owner's loss, not the taker's gain, which is the measure of compensation for the property taken (United States v. Miller, supra; United States v. Chandler-Dunbar Co., supra, [229 U.S. 53] p. 81, [33 S.Ct. 667, 57 L.Ed. 1063]; Boston Chamber of Commerce v. Boston, 217 U.S. 189, 195, [30 S.Ct. 459, 460, 54 L.Ed. 725]), not all losses suffered by the owner are compensable, under the Fifth Amendment. In absence of a statutory mandate (United States v. Miller, supra, 317 U.S. p. 376, [63 S.Ct. p. 281, 87 L.Ed. 336]) the sovereign must pay only for what it takes, not for opportunities which the owner may lose. See Orgel, Valuation Under Eminent Domain (1936) § 71, § 73. On the one hand are such cases as Monongahela Navigation Co. v. United States, supra, [148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463], where it was held that the United States had appropriated a going enterprise to its own ends and must make compensation accordingly. But it is well settled in this Court that 'Frustration and appropriation are essentially different things.' Omnia Co. v. United States, supra, 261 U.S. p. 513, [43 S.Ct. p. 439, 67 L.Ed. 773]. Thus in Mitchell v. United States, 267 U.S. 341 [45 S.Ct. 293, 69 L.Ed. 644], the owner was denied compensation for the destruction of his business which resulted from the taking of his land for a public project even though the business could not be reestablished elsewhere. This Court, after noting that 'settled rules of law' precluded a

consideration of 'consequential damages' for losses of a business or it destruction, stated: 'No recovery therefor can be had now as for a taking of the business. There is no finding as a fact that the government took the business, or that what it did was intended as a taking. If the business was destroyed, the destruction was an unintended incident of the taking of land.' 267 U.S. p. 345 [45 S.Ct. page 294, 69 L.Ed. 644]. That which is not 'private property' within the meaning of the Fifth Amendment likewise may be a thing of value which is destroyed or impaired by the taking of lands by the United States. But like the business destroyed but not 'taken' in the Mitchell case it need not be reflected in the award due the landowner unless Congress so provides."

■ The settled rules of law preclude the allowance of consequential damages such as business losses resulting from the taking of property. If the business of Silica was damaged, the damage was an unintended incident of the taking of the land. Mitchell v. United States, (1925) 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644; United States v. Miller, supra; United States v. Petty Motor Co., (1946) 327 U.S. 372, 377, 66 S.Ct. 596, 90 L.Ed. 729.

In United States v. Petty Motor Co., supra, the court at page 377 of 327 U.S., at page 599 of 66 S.Ct. said:

"The Constitution and the statutes do not define the meaning of just compensation. But it has come to be recognized that just compensation is the value of the interest taken. This is not the value to the owner for his particular purposes or to the condemnor for some special use but a so-called 'market value.' It is recognized that an owner often receives less than the value of the property to him but experience has shown that the rule is reasonably satisfactory. Since 'market value' does not fluctuate with the needs of condemnor or condemnee but with general demand for the property, evidence of loss of profits, damages to good will, the expense of relocation and other such consequential losses are refused in federal condemnation proceedings."

In Olson v. United States, (1934) 292 U.S. 246, at page 255, 54 S.Ct. 704, at page 708, 78 L.Ed. 1236, the court said:

"Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined. The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held. Mississippi & R. R. Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206; Clark's Ferry Bridge Co. v. Public Service Commission, 291 U.S. 227, [54 S.Ct. 427, 78 L.Ed. 767], 2 Lewis, Eminent Domain, (3d Ed.), § 707, p. 1233; 1 Nichols, Eminent Domain (2d Ed.), § 220, p. 671."

In United States v. 711.57 Acres of Land, (N.D.Cal.1943), 51 F.Supp. 30, at page 32 the court said:

"The special adaptability to his own use, of land, with which an owner is reluctant to part, is not an element to be taken into account in reaching fair market value." (Citing United States v. Miller.)

In the general unnumbered finding of fact appearing in the discussion section of the report, heretofore referred to, the majority found that the small remainder of this tract, under which the minerals are held by Silica, is insufficient in size to serve the purposes for which the whole tract was used, and no serverance damages were included in the award. (Report of Commissioners, top of page 32.)

Silica did not adduce any direct testimony as to the market value of the 67 acres, but the witnesses Charles E. Baxter, Jr., and Robert L. Markland were questioned by counsel in an apparent effort to establish the market value of the land alone without considering it as a part of the Guion, Arkansas, property. At page 64 of the transcript the following appears:

"Q. Are you saying to this Commission that a willing buyer would pay $125,000.00 for this deposit down here at Martin's Bluff by itself?

A. Yes, if he wanted a good piece of silica sand he probably would, yes.

Q. Are you saying that is the market value of it Mr. Baxter?

A. No, I did not say that was the market value of it.

Q. What is the market value of it?

A. I have no idea, I was thinking only of the value of the piece of property to Silica Products Company and to me as a buyer if you are going to use a hypothetical question."

The witness Robert L. Markland testified at pages 432–433 of the transcript as follows:

"Q. What would that hypothetical buyer pay for and what would the hypothetical seller take for the Springdale reserve alone?

A. It would depend on the purchaser. In my case and being in an area beyond the major competitors who are between my location and this, frankly I would have no interest alone. However, a producer in the area to the west or possibly to the north, who could derive benefits similar to those which have evidently been derived by Silica Products Company and could be derived by them in the future, I would say this would be worth something to one of these others.

Q. How much under the same hypothetical circumstances?

A. I would have to say, if I was one of these hypothetical purchasers, in the same figure range, $100,000.00 to $125,-000.00.

Q. You are talking about a hypothetical purchaser that is already now in production in this area?

A. Yes, sir.

Q. How about some hypothetical purchaser and knowledgeable operator in the industry who is not in production in this area?

A. I would have to say, in my judgment, a hypothetical purchaser not in the area would be inviting a great deal of competitive difficulties if he moved into this situation with no other stabilized operation in the area.

Q. And why?

A. Because any business which he obtains would have to be business that he could take away from the present producers.

Q. Meaning who?

A. Pacific, or Ludwig, or Mill Creek."

Mrs. Mertie A. Harris, President of Silica, testified that in her opinion that on the date of the taking, Silica's plant and properties, leases, fee lands and reserves of minerals at Guion, together with the 67-acre tract, was worth in excess of $2,000,000, and that after the taking of the 50.5 acres of the 67 acres in question, the value would be $1,800,000, a difference of $200,000. Sam C. Cook, Jr., fixed the before value of all the property owned by Silica at $2,000,000 and that after the taking at $1,700,000, or a difference of $300,000.

Mr. Charles E. Baxter, Jr., fixed the before value at $1,250,000 and the after value at $1,125,000, or a difference of $125,000. Mr. Markland fixed the before value at from $1,000,000 to $1,500,000, and the after value between $900,000 and

$1,375,000, or a difference or severance damages of $100,000 to $125,000.

The gist of the claim of Silica for a recovery of between $100,000 and $300,000 is based upon its claim, as heretofore set forth, to-wit: that the tract serves as an adequate proven reserve which could be used in the event of any change in circumstances interfering with its continued profitable operation at its Guion property and to enable it to obtain more favorable freight rates to its markets from the Missouri Pacific Railroad for the production of its Guion plant and to discourage and prevent a competitor from entering the Springdale, Everton and Green Forest area where other deposits exist.

During the 32 years that Silica has owned or controlled the tract, it had been put to no other use. No mining of any kind has been done and, in fact, very little exploration was done prior to the taking of the tract, but it is well established that the tract in question contains a fine grade of silica sand. In Finding of Fact No. 5, the Commission found that there is a deposit of sand under the 67 acres approximately 50 feet in thickness in two qualities—one suitable for glass manufacture in an estimated quantity of 2,700,000 tons, and the other suitable for foundry sand in a quantity estimated to be 3,800,000 tons. However, in order for Silica to recover anything more than the fair market value of the mineral estate taken of the 67-acre tract, the evidence must establish that there was a unity of use or integrated use by Silica of its Guion properties and the 67-acre tract.

The majority of the Commission found that the use of the Springdale deposit as a freight rate lever and as a deterrent to competition is an integrated part of the overall use of lands and minerals owned by Silica, and the taking of these tracts has caused a substantial damage to be sustained by Silica.

At the close of all the testimony the attorney for the Government moved that the Commission award an amount as the value of the mineral interest no greater than the Government's evaluation, which was zero, for the reason that it had been established no unity of use had been established between the plant at Guion and the land involved; that the estimate of valuation was merely an estimate of damages which are consequential and not compensatory; that the estimate was based upon a potential highest and best use from its existing use to the highest and best use for the production of silica sand; and it had not been established that there will be any market in the foreseeable future for any sand from the land involved, and the claim is based upon sheer conjecture and speculation and not supported by any competent or substantial evidence.

Prior to the closing of the evidence the attorney for the Government had moved to strike all the testimony of the witnesses who testified as to before and after values on the ground the evidence was not sufficient to show any unity of use between the part of the tract taken and the Guion property.

In United States v. Mills, supra, the court at page 405 of 237 F.2d quoted with approval the holding in Sharpe v. United States, supra, (191 U.S. 341, 24 S.Ct. 114), as follows:

"'If the evidence were such as to leave it a matter of some doubt whether the land owned by the plaintiff in error were one tract or separated into three separate and distinct tracts, it would be proper to leave that question to the jury * * *.'"

In considering the evidence in Mills, supra, the court said at page 405 of 237 F.2d:

"Upon the evidence here, we believe that reasonable minds could differ as to whether these parcels constituted one tract or two tracts, and that the Court could not properly say, as a matter of law, that Tract A–100E was a separate tract, but should have received the proffered evidence and should have submitted the issue to the jury, and that the failure to do so was error, as contended by the Government."

In Baetjer v. United States, supra, the court at page 395 of 143 F.2d held that the trial court erred in ruling that the appellants' lands on Puerto Rico had not been severed in the legal sense from their lands on Vieques; that their evidence should have been considered in order to determine as a matter of fact whether in spite of lack of physical contiguity, their holdings by reason of the uses to which they were being put, or would probably be put in the reasonably near future, constituted a single, integrated, unitary tract; but it further held that it does not follow that appellants were necessarily entitled to severance damages if this question was answered in their favor.

■ The court is not unmindful of the finding of the majority of the Commission that the 67-acre tract and the Guion properties constituted a single, integrated, unitary tract, and that it is the duty of this court to accept the findings of fact unless clearly erroneous. In considering and deciding a similar problem, the court in Baetjer v. United States, supra, at page 396 said:

"In short the stricken evidence would indicate a compensable loss only if it means that after the taking the appellants' mills had an uneconomic over-capacity so that they could not be operated by anyone as efficiently and therefore as profitably as before the taking, this being a matter which a hypothetical willing buyer would consider a determining what he would pay for the property."

■ The evidence establishes without doubt that the Guion plant will continue to operate profitably as before, and that the Guion properties has suffered no compensable damage by reason of the taking of the 50.5 acres of the 67-acre tract. Any other holding would be based upon conjecture, speculation and on events that are not likely to happen in the foreseeable future.

[11] A reviewing court is not required to accept the awards of the Commission if they are clearly erroneous in whole or in part "because based upon a substantial error in the proceedings, because based upon a misapplication of the controlling law, because unsupported by substantial evidence, or because contrary to the clear weight of all the evidence." United States v. Rainwater, supra.

■ In view of the misapplication of the controlling law by the Commission, it is unnecessary to further consider Findings of Fact 7 and 8 objected to by the Government. As to the objections of Silica to Findings of Fact 10, 14, 21 and 22, the court is of the opinion that 10, 14 and 21 would be more appropriately considered in determining the market value of the mineral estate taken in the 67-acre tract, together with severance damages, if any, excluding any consideration of the Guion property. If an appellate court should hold that these findings of fact are material, an examination of the evidence is convincing that all four of the findings objected to by Silica are in fact supported by substantial testimony. Without doubt, there are other silica sand deposits in the general area, and the deposits are similar in quality, depth and nature of the overburden, and thickness of vein. This was testified to by various witnesses, and the only testimony offered by Silica was to the effect that it did not know as a fact that such other deposits existed in the general area. As to the market for the silica deposits, there is no substantial market in the immediate vicinity. The market lies to the southwest, west, north and northwest, and is supplied by Silica from its Guion plant and by competitors of Silica residing in Oklahoma and Missouri.

Finding of Fact 21 objected to by Silica refers only to the damages that were being considered to the surface estates in view of the provisions of the reservation of the mineral interests in the deeds conveying the surface estates to the various owners. As to Finding of Fact 22, there is no testimony to establish the economic feasibility of a plant at Springdale.

Silica is entitled to an award for the market value of the mineral estate taken

in the 67-acre tract, together with severance damages, if any, to the remainder of the tract not taken; and the report of the majority of the Commission, awarding $35,000 on the ground that the 67-acre tract was integrated and operated as a unit with the Guion property, should be disapproved and remanded to the Commission for further hearing, if necessary, and for a consideration and determination of the market value of the mineral estate taken in the 67-acre tract, together with severance damages, if any, excluding any consideration of the Guion property, and to award to Silica the amount so found.

An order in accordance with the above is being entered today.